[No. 4038.]

## EVANS ET AL. V. WELCH ET AL.

1. DEDICATION.

There can be no dedication of land to the public unless the intention to dedicate is clearly shown. That the owner of land in laying out an addition to a city left a narrow strip of land 20 feet in width between a street which he dedicated to the city and other town lots having no frontage on a street which strips he designated as "out-lots" is not sufficient to show a dedication of the strip to the public.

2. ADVERSE POSSESSION—PRESUMPTION.

The presumption of law is that possession of property is in consonance, or harmony with the rights of the true owner, and before any rights based upon possession or occupancy can extinguish that legal title, it must be shown among other things, that it was antagonistic. And the rule applies to a claim based on the statute of 20 years' limitation.

3. CONVEYANCES—APPURTENANCES.

In a conveyance of specified land other land does not pass as an appurtenance.

4. LIMITATION—ADVERSE POSSESSION—TACKING POSSESSION—CONVEYANCE.

Before a party claiming land by adverse possession and occupancy under the 20 years statute of limitation can tack his own possession to that of his grantor for the purpose of establishing the statutory bar, the particular premises claimed must have been embraced in the deed or transfer to him whatever the form thereof may have been.

5. LIMITATION—ADVERSE POSSESSION—BURDEN OF PROOF—PRESUMPTION.

It is incumbent upon one who relies upon adverse possession to extinguish the legal title, to establish the necessary facts by clear and satisfactory evidence. All presumptions are in favor of the holder of the legal title, and the burden of overcoming them rests with him who assails the legal title.

*Error to the District Court of Arapahoe County.*

At the trial of this action for the recovery of possession of real estate brought by the heirs of John Evans, deceased, as plaintiffs, against Mary Welch, claiming to own the same, and Harry E. Maxville, her tenant, the judgment was in favor of defendants. After the writ of error was sued out from this court

to review that judgment, Mary Welch died, and her heirs have been substituted as defendants in error.

The questions for decision are purely legal, there being no material conflict in the evidence. The record discloses that prior to the year 1868 John Evans was the owner in fee of a certain tract of land in Arapahoe county, and during that year and while still holding the legal title, he subdivided and platted the same as Evans Addition to the city of Denver, the map and plat of which he filed in the office of the county clerk and recorder of Arapahoe county before the taking effect of the act of 1868 providing for the making and recording of town plats. In platting this addition, Evans carved out of his land an extension of Colfax avenue, now commonly known as West Colfax avenue. This avenue was one hundred feet in width, and there was left, as shown on this plat, on the north side of it certain strips of land twenty feet in width, adjoining lots in different blocks in the east division of the city of Denver, and these strips were designated on the plat as "out-lots." One of them known as out-lot 5, adjoined lots 21 and 22, in block 206 in the east division of the city of Denver. At that time these lots did not have a frontage on any street.

No conveyance of this out-lot or any part of it, was ever made by John Evans, and the record title was in him at the time of his death in 1897. When the plat was filed, lots 21 and 22, in block 206, were owned by Frances Culp, and in 1871 she deeded the same to Bradford D. Bradley, and the latter conveyed them to Joseph Thompson in 1873. They were vacant until some time in the year 1874, when Mr. Thompson constructed a frame house upon a portion of them and built a fence around the house, which en-

closed a portion of out-lot 5, and it is this enclosed portion which is in controversy in this action. The frame house built by Thompson extended partly over and upon the out-lot and the house and fence were at the commencement of this action, and still are, standing.

In 1876 Thompson gave a trust deed upon lots 21 and 22 to William F. McGrath, which was afterwards duly foreclosed and the premises bought by Eugene F. Manchester. In 1879 Manchester conveyed them to Edward F. Richie, and later in the same year Richie conveyed to Adelia Lockhart, and in March, 1881, Mrs. Lockhart conveyed the premises to Mary Welch, who was one of the defendants at the time this action was instituted. At the time of the purchase by Mrs. Welch she took possession of the house which had been constructed by Thompson in 1874. During her possession Mrs. Welch built a small brick house on the land enclosed by the fence which extended a few feet over and upon out-lot 5, and this house stood practically on the same ground which had previously been covered by a stable built by Thompson.

After the death of John Evans his heirs caused notice to be served upon Mrs. Welch and her tenant that they were owners of out-lot 5 and demanded that they remove forthwith the building and fence thereon and quit possession. Failing to do so, this action was begun on the 7th day of January, 1898.

Upon the recorded plat or map of Evans' addition was a statement by John Evans that he had laid out the parcels of land as shown upon the plat under the name of Evans' Addition and granted to the city of Denver the perpetual right of way to all the streets and alleys of the addition.

Whether Thompson, who was the first occupant of the portion of out-lot 5 here in controversy, held as a tenant of or adverse to, John Evans does not appear; nor is it shown whether the encroachment upon it by the buildings and enclosures made by him was by mistake or intentional. There is no evidence at all as to whether Manchester, or anybody else, occupied the same while he was the owner, and the same is true with respect to Edward F. Richie. Mrs. Lockhart occupied the house on the premises, a portion of which was on out-lot 5, for about fifteen months, but whether her possession of the property other than lots 21 and 22 was permissive or antagonistic to John Evans is not disclosed.

After the purchase by Mrs. Welch she seems to have continuously occupied the portion of out-lot 5 in controversy until this action was brought. She testifies that when she received the deed of conveyance from Mrs. Lockhart for lots 21 and 22, she supposed that the property she was buying embraced everything surrounded by the fence; but she was not aware then, or at any time thereafter until demand was made upon her to quit possession, that the enclosure embraced any portion of out-lot 5. She supposed, not only when she was building a house upon her premises, but at all other times, that lots 21 and 22 embraced all of the property to which she made any claim.

In none of these various transfers of lots 21 and 22 was any description or reference made to out-lot 5, and there is no pretense that there was ever a deed of conveyance, or a parol transfer, of out-lot 5, or possession thereof, as such. Nor is there a particle of testimony that any of the various occupants of the disputed territory supposed they were in possession

.of any property except that embraced within the description of lots 21 and 22; and in so far as there was any possession by the occupants of out-lot 5, it would seem that it was a mistaken one, and not an intentional possession of property not belonging to them; manifestly the possession was supposed to be rightful because included within the description, and part, of the two lots 21 and 22.

Mr. Robert W. Bonynge for plaintiffs in error.

Mr. Hugh Butler for defendants in error.

Chief Justice Campbell (after the foregoing statement of facts) delivered the opinion of the court.

The legal title of the land in dispute standing in the name of John Evans upon the records and this fact being shown to the court, his heirs, as plaintiffs, were entitled to judgment unless the defendants showed that such title was extinguished. This they attempted to do under two separate and distinct defenses: *first*, that there was a dedication by John Evans of out-lot 5 to the city of Denver as public property; *second*, that plaintiffs are not entitled to maintain their action because possession of the premises had been uninterruptedly enjoyed by the defendants and their grantors for a period of more than twenty years before the beginning of the action, this defense being predicated upon section 1 of the limitation act, Session Laws 1893, page 327, which reads:

"That no person shall commence an action for the recovery of lands, or make an entry thereon, unless within twenty years after the right to bring such action or make such entry first accrued, or within

twenty years after he or those from, by or under whom he claims, have been seized or possessed of the premises, except as hereinafter provided."

1. Defendants invoke the general rule that in ejectment a plaintiff must recover, if at all, on the strength of his own, and not on the weakness of the defendant's, title, and so insist that this out-lot belongs to the city of Denver as a donee. There was no express dedication of out-lot 5 by John Evans; and the words of the conveyance by which he transferred the streets and alleys marked upon his plat did not in terms include any of the out-lots. The only contention of defendants in this behalf is that the circumstances under which the dedication of the streets and alleys was made, and the location and smallness of the fractions known as out-lots were sufficient to raise the presumption that they were to become public property open to the use of the public. And it is said that it would be straining the doctrine of presumption, particularly after a period of thirty years subsequent to the dedication, to say John Evans intended that a little strip of ground twenty feet in width, without an outlet on either side, should be treated or used as private property by him or his grantees.

There can be no dedication unless the purpose of dedicating is clearly and satisfactorily shown. Certainly, there has been no use of these out-lots by the public, and none is claimed. Upon the contrary, according to the position of defendants in error, a portion of this particular one has been continuously occupied by them and their grantors alone for more than twenty years. That the owner of the land designated the strip as an out-lot, and that it is a small fraction and located between lots lying in th the east

division of the city of Denver and the street which he dedicated to the city wholly out of his own lands, is not sufficient to show a dedication.

We are clearly of opinion that there was never any intention by John Evans to dedicate this out-lot to the public, that he did not do so, and that there was never any acceptance, or use, of it as public property.

2. Defendants maintain that the statute of limitations passed in 1893 governs this case, and that it applies to causes of action existing at the time it took effect. There is considerable discussion in the briefs, and was at the oral argument, as to whether the period of limitation is still sixty years, as it was said to be in this state prior to 1893,—and as to which in the case of *Latta v. Clifford*, 45 Fed. Rep. 108, Judge Hallett held it to be the only statute of limitations then applicable to actions of this character,—whether the act of 1893 was intended to be prospective only or retrospective, in its operation, and, if the latter, whether it is inhibited by section 11 of article 2 of our constitution directed against retrospective laws·

But in the view we take of the case, it is not necessary to pass upon these matters. Assuming for the purposes of this opinion only, but not so deciding, that the limitation act of 1893 governs, we proceed to inquire whether defendants have brought themselves within its provisions. The first possession which defendant's claim was taken of any portion of out-lot 5 was in 1874 by Thompson, who then was the owner of lots 21 and 22. We have examined with much care the entire record in this case, and are entirely convinced that, at least until possession was taken by Mrs. Welch in 1881, there is not any evidence whatever to show that the possession of any of the occu-

pants was antagonistic or adverse to the legal title of John Evans. The presumption of law is that possession of property is in consonance, or harmony, with the rights of the true owner, and before any rights based upon possession or occupancy can extinguish that legal title, it must be shown, among other things, that it was antagonistic.

Defendants ingeniously seek to draw a distinction between a possession claimed under this section of the limitation act, and an ordinary adverse possession, as generally understood. Counsel argues that while, if defendants' rights were based upon adverse possession, it must be shown that it was inimical to the legal title, that under a claim based upon this statute of limitations, such facts need not be shown. This is not the law. Possession, however long continued, if, with the permission of the true owner, will not operate to extinguish the legal title. And for aught that appears to the contrary in this record, whatever possession there was of out-lot 5 before Mrs. Welch took possession was with the full consent of John Evans, the owner of the legal title. And even if the doctrine of tacking applies here, the defendants have signally failed to show that their possession can in any wise be aided by the possession of their grantors.

For an additional reason this defense must fail. The general rule is that in a conveyance of specified land other land does not pass as an appurtenance to it. There are, or may be, exceptions, as where, if such be the intentions of the parties, a water right may pass as appurtenant even though no specific reference to it be made in the deed. It is conceded that there was no conveyance by deed, or parol, of any part of out-lot 5, or of possession thereof by that

description. And certainly there is entirely lacking any evidence of an intent on the part of the owners of lots 21 and 22 in the various transfers to convey any part of out-lot 5, or possession thereof. Indeed, there is no evidence that any of the occupants knew until this suit was brought that they had possession of any part of the out-lot. They supposed that all the ground of which they were in possession was included within the boundary lines of lots designated as numbers 21 and 22, and the kind and extent of the possession which the various grantors had and their grantees got was, as they supposed, such only as attached and belonged to these two lots. That a person occupying premises adversely may tack his possession to that of persons under whom he claims, for the purpose of establishing the statutory bar, the particular premises claimed must have been embraced in the deed or transfer to him whatever the form thereof may have been. *Ryan et al. v. Schwartz, et al.*, 94 Wis. 403. That essential element is lacking here.

Defendants recognize the rule that the ownership of the fee draws to it a constructive possession, and that such constructive possession continues until it is destroyed by an actual adverse possession; that the owner of property, though not in actual possession, is always constructively in possession. But, as already said, counsel insists that the successive possession of these several distinct occupants of land between whom there was a privity, can be united to make up the period required to make title by possession. Counsel further appreciates the weakness of the testimony to establish this defense, but says that because of the lapse of time the application of the doctrine of presumption, to which we have just al-

luded, should not be too rigidly enforced. If the transactions had been recent, he says, it might have been easy to prove by the actors themselves exactly what was done, and what was intended, at the time of each sale and transfer, but he thinks it is requiring too much to say that defendants should now produce clear and satisfactory evidence thereof, and insists that when plaintiffs demand the production of stronger evidence of privity and adverse possession than that furnished, in the nature of things it is impossible to comply with it; and, therefore, the doctrine of presumption should be indulged in favor of the defendants to supply the want of specific and direct evidence in regard to the different particulars connected with the principal fact.

We appreciate the plausibility, but not the conclusiveness, of such argument. It is incumbent upon one who relies upon an adverse possession to extinguish the legal title, to establish the necessary facts by clear and satisfactory evidence. All presumptions are in favor of the legal holder, and the burden of overcoming them rests with him who assails the legal title.

The learned judge who tried this case, as shown by his opinion brought up in the record, did not hold that a dedication was established, but concluded that the evidence was sufficient to show a privity of interest or estate between the defendant Welch and her several grantors so that her possession could be aided by that of her predecessors in counting the period required by the statute of limitations. He therefore found that John Evans in his lifetime might have brought this action for the recovery of the outlot in the year 1874; that this was the date when his cause of action accrued; so that more than twenty

years elapsed since that right accrued, and therefore the bar of the statute is complete.

As we read the record, it is not a case where there s a conflict of evidence as to the questions of .fact which it was necessary for the defendants to establish; but the evidence is all one way and it clearly shows that, even if it be conceded that the possession of Mrs. Welch was antagonistic to the legal title of the owner, it was not for the full period of twenty years, and that she cannot aid the possession which she had by that of her grantors for the reasons already indicated.

The judgment should therefore be reversed and the cause remanded.

*Reversed.*