No. 15,777.

TRUEBLOOD ET AL. *v.* PIERCE ET AL.
(179 P. [2d] 671)

Decided April 7, 1947.

Mr. H. W. SEAMAN, Mr. CONRAD L. BALL, for plaintiffs in error.

Mr. HATFIELD CHILSON, Mr. ROBERT M. McCREARY, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

CHARLES A. PIERCE and Ethel B. Pierce, defendants in error, to whom we hereinafter refer as plaintiffs, brought an action in the district court against G. W. Trueblood and Ruth H. Trueblood, plaintiffs in error, hereinafter designated as defendants, for the purpose of having decreed an easement for driveway purposes over and across a portion of defendants' property, quieting the title thereof, and by mandatory injunction require defendants to remove an obstruction placed by them in the driveway, thereby preventing plaintiffs' use thereof. The cause was tried to the court without a jury and judgment entered in favor of plaintiffs against defendants decreeing the easement, quieting plaintiffs' title thereto, and requiring defendants to remove the obstruction placed thereon. Defendants are here seeking a reversal.

Plaintiffs in their complaint alleged that they and defendants are the owners of adjoining properties in Loveland, Colorado, the property of plaintiffs adjoining that of defendants on the east. They further alleged that they are the owners of an easement consisting of a driveway over and across the easterly portion of defendants' property leading to the public thoroughfare on the south. The driveway in question is located along the division line between the respective properties, approxi-

mately one half of the same being located upon plaintiffs' property and the other half upon that of defendants. Plaintiffs and their predecessors in title have, for more than twenty-five years, used the driveway in question, and for many years defendants and their predecessors have also used it jointly with plaintiffs. In August, 1945, defendants constructed a curb along the easterly boundary line of their property, which obstructs plaintiffs' use of the driveway. Plaintiffs, as stated, sought a decree establishing the easement for driveway purposes, quieting their title to the same, and also asked for a mandatory injunction requiring the removal of the curb erected by defendants.

Defendants by their answer admit all of the material allegations of the complaint except plaintiffs' ownership of the easement as alleged.

In none of the deeds to the properties now owned by either plaintiffs or defendants is there any reference to any easement or claim of easement or a driveway.

The evidence established, and the court found, that in 1916 plaintiffs' predecessor in title became the owner of the property now owned by plaintiffs upon which the present dwelling was then located, and the property owned by defendants was at that time vacant and unimproved. In 1918 plaintiffs' predecessor in interest laid out and utilized a passageway partly on and along the easterly boundary of the property now owned by defendants, and thereafter, in 1920, purchased the easterly five feet of a lot adjoining his on the west and belonging to the then owner of the property now occupied by defendants. At that time plaintiffs' predecessor in interest constructed a garage on the northwesterly corner of his property which could be conveniently reached and utilized only by use of the passageway as then laid out and as it now exists. The court further found that in 1924, the street abutting the lots of plaintiffs and defendants on the south was paved; that curbs and gutters were installed and at that time a driveway-opening or

apron to the sidewalk was constructed, centered substantially upon the division line between plaintiffs' and defendants' properties. The driveway or apron thus constructed was continuously used by plaintiffs and defendants, as well as their predecessors in title, as a means of entrance to the driveway between their properties, and remained as such until enlarged by defendants extending the same on their property in 1945. In 1926 a residence was constructed on the property now owned by defendants and which was purchased by them in 1921. Plaintiffs acquired title to their property in August, 1928, and since that time have openly used, as the only reasonable convenient means of utilizing their garage, the driveway mentioned. Defendants and their predecessors in interest have used this driveway jointly with plaintiffs for a period of at least eighteen years as a means of entrance to their garage.

At the trial the court made informal findings, which in part are as follows:

"The purchase of the five foot strip off of lot 20 in 1920, the building of the garage at or about that time, and placing of the same with respect to the driveway as thereafter used, the fact that that driveway was then and thereafter made the only means of convenient access to the garage, the placing of the opening or approach to the driveway, and its construction at the time the street was paved in 1924 corresponding to a driveway along the line to the two properties, very strongly indicates, and, in the absence of evidence to the contrary, warrants the finding that then adjoining owners intended to and did lay out a way on the dividing line, to be devoted to mutual use as a driveway or passageway, and accordingly such finding is made, and under the facts, a grant for joint or mutual driveway purposes should be presumed. And the continued uninterrupted use to that purpose by the owners of plaintiffs' property for more than twenty years, and by the owner of defendants' property since such use was needed and for

more than eighteen years, has ripened into an easement over defendants' property appurtenant to the plaintiffs' property.

"As to the extent of such easement, the use during the periods above mentioned has been a single-track way, and because of the opening between curbs at the sidewalk line of the paved approach being nine feet, and the strip purchased being five feet wide, indicates, and the finding will be, that the driveway is not in excess of ten feet in width, five feet being on plaintiffs' property and five feet on defendants' property."

It was adjudged and decreed that there was an easement across the portion of the east ten feet of lot twenty as described, for the maintenance and use of a joint driveway, and that plaintiffs are the owners of an easement over and across that part of defendants' property occupied by said driveway; and defendants are the owners of an easement over and across that part of plaintiffs' property occupied by the joint driveway and that the easements for said joint and mutual driveway are appurtenant to the respective properties of plaintiffs and defendants, and the court further required the removal of the obstruction and enjoined further interference by defendants with plaintiffs' use of the driveway.

In the specification of points, upon which defendants rely for a reversal, they assert the insufficiency of the evidence: (1) To establish the use of the easement for a period of eighteen years; (2) to establish any adverse use of the easement; (3) to establish a joint or mutual easement.

As we understand defendants' position, it is that, notwithstanding the fact that plaintiffs and their predecessors have used the driveway in question for more than eighteen years, neither the plaintiffs nor their predecessor in interest having individually used the driveway for that period of time, no easement is acquired by prescription, and even though it should be determined that the use of plaintiffs and their prede-

cessors might be considered as one under the doctrine of "tacking," in view of the circumstances here, it could not be regarded as an adverse possession. Further, that the evidence does not warrant the finding that there is a joint and mutual driveway because, in order to warrant such a determination, there must be either a proven mutual agreement for the construction of the driveway or it must have been constructed by an owner of the entire tract and subsequently divided or there must have arisen between adjoining owners a dispute as to the boundary line and an agreement that the center of the driveway was the true boundary line, or the driveway must have been used by the public adversely for a sufficient period to establish a public way.

We shall first consider whether the doctrine of tacking, under the circumstances of this case, is applicable. Defendants say it is not, and to support their position they rely largely on the law announced in our decisions in *Ward v. Farwell*, 6 Colo. 66, and in *Durkee v. Jones*, 27 Colo. 159, 60 Pac. 618, both of which cases are concerned with easements in alley or roadways, and also on our decision in *Evans v. Welch*, 29 Colo. 355, 68 Pac. 776.

Our decision in *Ward v. Farwell, supra,* is clearly not in point. That was an action to enjoin defendants from obstructing an alleged public road. It is stated in the opinion: "The plaintiff claims the right to use the road, *first,* as an easement appurtenant to lot four; *second,* as a public road by reason of dedication and user." and, "It is claimed in argument that this road is an easement appurtenant to the part of lot four deeded by McNamara to Judd and Crosby, and passed with the estate to plaintiff Farwell."

An examination of the record discloses that the deed under which Farwell claimed was dated March 2, 1875; further, that the action was commenced on December 19, 1878; tried in the district court on June 13, 1879, and determined in this court at the December, 1881, term thereof. In neither the complaint, briefs, nor offered

evidence, was there any contention that Farwell had acquired an easement by prescription. Under the factual situation no such contention could have been made without the application of the doctrine of tacking, and no evidence in support thereof was offered.

In *Durkee v. Jones, supra,* plaintiffs claimed their right to a disputed portion of an alley by grant, adverse user under the statute of limitations, and by prescription. The trial court entered judgment for defendants, and this judgment was brought here by appeal.

In considering the decision in *Durkee v. Jones, supra,* we have experienced great difficulty in understanding the factual situation giving rise to the litigation. We have read and studied the record and briefs in the case, but they have been of little aid to us. The portion of the opinion upon which defendants place particular emphasis and rely largely for a reversal here reads as follows: "The claim of appellants to this alley by prescription is based upon the fact, as they assert, that it has been used by them and their grantors for more than twenty years. This claim is not tenable, as it appears from an examination of the conveyances above abstracted, and others in the record affecting their title, that neither of appellants, nor any one of their grantors, has been the owner of these tracts for the period of twenty years; and although more than that period has elapsed from the time the alley was first established, down to the date when this action was commenced, such rights would be inchoate as to any particular owner, unless enjoyed for the full period. In none of the conveyances to these several tracts is any attempt made to convey such rights, and as inchoate prescriptive rights to easements do not pass by deed, unless specifically mentioned, appellants have acquired no easement in the disputed alley by prescription. Washburn on Easements (4th ed.), 59; *Spaulding v. Abbott,* 55 N.H. 423; *Swazey v. Brooks,* 34 Vt. 451; *Meek v. Breckenridge,* 29 Ohio St. 642."

We have examined Washburn on Easements (4th ed.),

59, and the cases therein cited, and have carefully considered them. We find that the paragraph cited is under the general subdivision "Acquiring Easements by Grant" and therein we find: "But the word 'appurtenance' in a deed only carries easements already existing and appurtenant to the estate granted. It will not, therefore, include an inchoate prescriptive right over the land of another. In order to convey such a right, it must be specifically described in the deed." The footnote in support of the last full sentence of the quoted portion mentions four cases, three of which are cited in our opinion in *Durkee v. Jones, supra.* A reading of the four cases cited warrants the statement that in each the plaintiff who was a grantee under a warranty deed sought relief against the grantor for breach of warranty, contending that under the warranty he was entitled to an easement over a servient estate. It was in each case properly held that the easement not having ripened into title by prescriptive or other use it did not pass as an appurtenance to the demised premises. It might further be observed that in none of these cases supportingly cited by Washburn were the questions of adverse use, prescription, tacking or privity discussed; neither were they relied upon by the grantee for relief.

So far as we have been able to learn, neither has the mentioned paragraph of the opinion in *Durkee v. Jones, supra,* nor the syllabus covering the same ever been cited, relied upon or approved by the courts of Colorado or elsewhere as authority; nor have they been regarded as authority requiring inchoate prescriptive rights to be specifically mentioned in a deed. As a matter of fact, if the inchoate prescriptive easement was specifically mentioned and described in a deed to the dominant estate, any asserted right or claim thereto would be by grant and would support only a privity of possession.

In *Evans v. Welch, supra,* there was presented for consideration the rights of Welch to the ownership and possession of an out-lot claimed under adverse posses-

sion. It is clearly stated in the opinion that Welch, under a mistake of fact, had possession of the out-lot, believing it to be included within the real estate which she had purchased and which then was enclosed by a fence. It is evident that Welch had no intent to claim possession of the out-lot under her deed, her possession being, as we have said, merely a mistake of fact. In this connection it was said: "It is conceded that there was no conveyance by deed, or parol, of any part of out-lot 5, or of possession thereof by that description. And certainly there is entirely lacking any evidence of an intent on the part of the owners of lots 21 and 22 in the various transfers to convey any part of out-lot 5, or possession thereof. Indeed, there is no evidence that any of the occupants knew until this suit was brought that they had possession of any part of the out-lot. They supposed that all the ground of which they were in possession was included within the boundary lines of lots designated as numbers 21 and 22, and the kind and extent of the possession which the various grantors had and their grantees got was, as they supposed, such only as attached and belonged to these two lots."

It thus is evident that adverse possession could not be successfully established unless there was an intent on the part of Welch to occupy real estate to which she had no title by deed; consequently, this statement in the opinion definitely and correctly determined that Welch's title by adverse possession could not be sustained. Immediately following the above-quoted statement we find the following: "That a person occupying premises adversely may tack his possession to that of persons under whom he claims, for the purpose of establishing the statutory bar, the particular premises claimed must have been embraced in the deed or transfer to him whatever the form thereof may have been. *Ryan et al. v. Schwartz, et al.,* 94 Wis. 403. That essential element is lacking here."

The syllabus in *Evans v. Welch, supra,* pertaining to the quoted portion of the opinion reads: "Before a party claiming land by adverse possession and occupancy under the 20 years statute of limitation can tack his own possession to that of his grantor for the purpose of establishing the statutory bar, the particular premises claimed must have been embraced in the deed or transfer to him whatever the form thereof may have been." So far as we are able to learn, this syllabus has never been relied upon, cited or approved by any judicial body. The last quoted part of the decision was not necessary in the determination of the questions there presented, and, consequently, is obiter dictum.

In the case of *Lundquist v. Eisenmann,* 87 Colo. 584, 290 Pac. 277, Mr. Justice Campbell, speaking for the court, definitely recognized the doctrine of tacking, in connection with which he said: "The law is firmly established in the courts of this country almost without exception, including Illinois, that where, as here, there is privity of title or estate, the possession of successive disseizors may be joined or tacked together so as to be regarded as a continuous possession. In 2 C.J., p. 82, section 66, the author states: 'It is a rule of almost universal application that, if there is privity between successive occupants holding adversely to the true title continuously, the successive period of occupation may be united or tacked to each other to make up the time of adverse holding prescribed by the statute as against such title.' That doctrine is clearly applicable to the facts of this case. This privity that is essential to the doctrine may be either of contract, estate or blood between the successive occupants. In this case before us there was privity of contract, estate and blood."

The citation from 2 C.J., supra, is extended and elaborated upon in 2 C.J.S., at page 687, and in connection therewith we find the following: "The privity required for the tacking of adverse possessions into one continuous possession is only privity of possession, not neces-

sarily privity of title. This necessary element [privity of possession] may be said to exist whenever one holds land under or for another or in subordination to his claim and under an agreement or arrangement recognized as valid between themselves; * * * "

In volume 1, American Jurisprudence, page 880, section 153, is the following statement: "Privity denotes merely a succession of relationship to the .same thing, whether created by deed or by other act, or by operation of law. If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued. Indeed, the purpose of a continuous possession is the continuous ouster of the owner. All that is necessary to privity between successive occupants of property is that one receive his possession from the other by some act of such other or by operation of law, the one taking under the other as by descent, will, grant, or other transfer of the possession."

Mr. Washburn, in his work on easements and servitudes (4th ed.) states at page 175, section 56: "Where a user and enjoyment of an easement has been begun by an ancestor for the benefit of an estate which, upon his death, descends to his heirs, and the use is continued by the heir so long that the two periods united will be equal to twenty years' adverse enjoyment, the prescription will be complete. The same would be true in case of vendor and vendee, or any person claiming as privy in estate with a previous occupant, provided the enjoyment were continuous, though no mention is made in the deed of the easement."

In 2 C.J.S., at page 686, we find the general preliminary statement: "Privity between successive possessors

is necessary, and when this element is present, relating all successors to the original entry, successive adverse holdings may be tacked." And in connection with the nature of the privity it is stated in the preliminary note at the top of page 687: "Privity of possession rather than privity of title is required; it exists when one holds lands in subordination to the claim of his predecessor and adverse to the true owner under an understanding between the predecessor and himself or by operation of law. * * * "

In 2 C.J.S., at page 694, is found the following: "It appears to be the generally accepted rule that any conveyance, agreement, or understanding which will refer the several adverse possessions to the original entry and which is accompanied by a transfer of possession will create such a privity as to permit a tacking. The ordinary solemnities for the transfer of land are not required; no written instrument is necessary, a parol transfer will suffice. The agreement, arrangement, or understanding between the successive adverse claimants, relied on to create the necessary privity, must be recognized as valid between such claimants, but it is immaterial whether or not the transfer is in fact valid."

Under the evidence in the instant case the trial court must necessarily have found that plaintiffs' predecessor in title in delivering possession of the lots now owned by plaintiffs, also deliver to them the use and possession of the driveway, and, consequently, there existed such a privity of possession as permitted plaintiffs to tack their possession to that of their predecessor.

We conclude that conceding that plaintiffs' predecessor in title had adverse possession of the driveway for a period of at least eight years; that plaintiffs themselves have had adverse possession for at least sixteen years, and that their predecessor in title having delivered possession of the driveway at the time of executing the conveyance of the lots to plaintiffs, delivered or transferred possession of the easement to them, then

their successive periods of use or enjoyment of the easement was sufficiently long to ripen into a prescriptive right therein, and the doctrine of tacking is applicable. This is in accordance with reason and is supported by the great weight of authority.

In so far as our announcement here may be in conflict with our decisions in *Durkee v. Jones, supra,* and *Evans v. Welch, supra,* those decisions are expressly overruled.

■■ Plaintiffs and their predecessors in title have been in possession of the easement for more than eighteen years; there is, as a result thereof, a presumption that their holding was adverse. *Haines v. Marshall,* 67 Colo. 28, 185 Pac. 651; *F. C. Ayers Merc. Co. v. Union Pacific R. Co.,* 16 F. (2d) 395; *Shonafelt v. Busath,* 66 Cal. App. (2d) 5, 151 P. (2d) 873; *Friend v. Holcombe,* 196 Okla. 111, 162 P. (2d) 1008; *Ferguson v. Standley,* 89 Mont. 489, 300 Pac. 245; 2 C.J.S., 822; consequently, it was incumbent upon defendants to overcome this presumption, and this they did not attempt to do. The presumption being that plaintiffs' possession was adverse, the uncontradicted evidence is that plaintiffs and their predecessors in title were in open, notorious and visible use and occupation of the easement under a claimed right thereto for more than eighteen years, and as a result thereof fully established their right to the easement by prescription.

■ The court decreed, inter alia: "That the plaintiffs are the owners of an easement over and across that part of the defendants' property occupied by said driveway, for the maintenance and use of said driveway, and the defendants are the owners of an easement over and across that part of the plaintiffs' property occupied by said joint driveway, for the maintenance and use of said driveway; that the easements for said joint and mutual driveway are appurtenant to the respective properties of the plaintiffs and defendants, which properties are described as follows: * * *"

234

The court's findings—and there was competent evidence in support thereof—with reference to the use of the driveway and the situation justifying it in determining that it was a joint or mutual interest were: "That the driveway substantially on the division line between the properties of plaintiffs and defendants has been used openly and as the only reasonably convenient means of ingress to and egress from the plaintiffs' garage since the plaintiffs purchased the property in August, 1928, and similar use of said driveway has been made by the plaintiffs' predecessor in title and estate, Charles E. Sears, since at least the year 1920; joint use of the same driveway has at all times been made by the defendants and their predecessors in interest, estate and possession at all times since such use was needed, and for at least eighteen years."

Defendants, in support of their contention that there was no mutual driveway or easement, cite from 28 C. J. S., page 673, the following: "Where adjoining proprietors lay out a way or alley between their lands, each devoting a part of his own land to that purpose, and the way or alley is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close the part which is on his own land; and in these circumstances the mutual use of the whole of the way or alley will be considered adverse to a separate and exclusive use by either party."

The evidence discloses that both plaintiffs and defendants used the driveway for more than the period of eighteen years, but it does not disclose whether defendants' predecessor in title cooperated in laying it out; in fact it may be conceded that the driveway was laid out and constructed by plaintiffs' predecessor in interest without the assistance or cooperation of defendants' predecessor in title, nevertheless, if the driveway, having been laid out and constructed, was utilized by defendants and their predecessors in title for their own use and purposes in entering the garage on their property

for the necessary period of time, this is sufficient, in our judgment, to justify the court in its determination that there was a joint and mutual driveway appurtenant to the respective properties of plaintiffs and defendants, and this being so, the mandatory injunction requiring the removal of the curb placed in the driveway by defendants was proper.

The record discloses that this case was well briefed by the attorneys and carefully considered by the trial court. We find no reversible error.

The judgment is affirmed.