Mr. Justice Hall
delivered the opinion of the Court.
*248 The parties appear here in the same order as in the trial court. We refer to the plaintiff in error as the Board and to the defendants in error as defendants.
On August 16, 1961, the Board filed its amended complaint, consisting of seventy-seven folios and six alleged claims for relief. Stated less awesomely, the material allegations of the complaint are that the Mayfield Road, some four miles in length (designated by the Board as County Road No. 4), is a public highway; that the defendants are obstructing the same at various points by placing fences across the same with locked gates, and that said fences are public nuisances which should be abated and that the defendants should be permanently enjoined from obstructing said highway.
Defendants answered and alleged that said road is not a public road, but is a private road owned by defendants.
Trial was to the court. The Board contends that (1) the road in question was constructed across the public domain prior to 1890 and became a public highway pursuant to Federal Statute. 43 U.S.C.A., § 932 (R.S. § 2477): “The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.”
(2) the road in question is a public highway, as defined by C.R.S. ’53, 120-1-1: “The following are hereby declared to be public highways:
* * *
“(3) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years.”
In order to sustain its contentions, the Board introduced in evidence six maps of the area where the road is alleged to be located. It also called seventeen witnesses who testified as to the location of roads, use thereof, maintenance of the same and obstruction thereof by defendants. This testimony is very vague, often :com *249 pletely contradictory, and fails to give a clear picture of the matters in dispute.
To add to the confusion, witnesses were repeatedly handed maps and asked to testify with reference to the location of roads, fences, gates, coal mines, and other points of interest shown thereon.
Often the record does not identify which of the six maps the witness was referring to. Though the judge may have known which map the witness had before him and understood his testimony, here in reviewing the record all too often we have no way of knowing what, the witnesses are talking about.
On occasion the record does show to which map the witness is referring; even then, testimony as disclosed by the record before us is more often than not without meaning, for the reason that points on the map referred to by the witness are not identified or marked.
To illustrate the type of testimony which prevails throughout this record, we quote:
“Q. I am not clear. Maybe the court is. Can you give us an idea where the Slagle mine is, just roughly, and the Tyler mine, so we won’t be confused with these two. Would you do that without being confused yourself? A. They ain’t got the road marked on there. This-looks more like the old road that goes to the Slagle mine, and this other (indicating), it took off way down here somewhere and wound up around here (indicating) and crossed Burro Creek. Q. Higher. Where’s that other map. It’s pretty small, but maybe you can see it. Shows, several parallel deals here (indicating). Could you at least get clear about the Slagle and Tyler mine road? I think the judge would want to know those a little more clearly. A. I ain’t much on reading maps. Q. This, of course, is north, Mr. Locke (indicating). This would be north, this would be going east (indicating). See, come in this way (indicating). A. Burro Creek — here’s where the road crosses the creek here (indicating). Q. Well, first, right down here is where the main high *250 way is (indicating). Then you go up here, and about in here (indicating), is where Masdens’ place is. I am not quite sure— MR. PETRIE: Here’s where you are crossing the creek (indicating).
* * *
“Q. Now, let’s get located here somewhere. Assume that this is Burro Creek here (indicating), this white line here is a road, starting at that point, which way would you say was the new road that you built to the Tyler mine? Where’s the road that— A. I would say this would be it (indicating). That would go off here (indicating). Q. Assuming further that the Tyler mine is here (indicating), assuming the Tyler mine is actually shown here (indicating), now— A. Well— Q. I direct your attention to this line along here (indicating), comes down this way (indicating) and up this way (indicating) and along this way (indicating), would you say that is the new road that you built to the Tyler mine? A. No, I wouldn’t. Q. Directing your attention to the fact that there is a fork in the road here (indicating), would you say that correctly locates the relative position of the two mines? A. Yes, that could be. * * * .”
The trial court, pursuant to agreement of counsel, viewed the area in which the road or roads are alleged to be located. Also the foregoing language, which is obviously meaningless to one reviewing the record, may have been meaningful to the trial judge, who could view the pointing of counsel and the witnesses to points of interest on a map.
The trial court found the issues against the Board, and concluded:
“1. The road in question was built by or for the homestead entryman partly on his own homestead and partly on land already patented and no public road could therefore exist under the laws governing the establishment of roads on the public domain.
“2. There has never been a dedication by the owners of this road to the public use.
*251 “3. There has been no adverse use of this road by the public for any period of twenty consecutive years and any use by persons other than the adjacent property owners has been permissive.
“It is therefore adjudged and decreed as follows:
“1. That the amended complaint herein be dismissed. * * *.”
The Board in relying upon adverse use of defendants’ lands for road purposes had the burden of proving such usage by clear and convincing testimony.
In Evans v. Welch, 29 Colo. 355, 68 Pac. 776, this court said: “* * * It is incumbent upon one who relies upon an adverse possession to extinguish the legal title to establish the necessary facts by clear and satisfactory evidence. * * * .”
Here the trial court held the evidence insufficient to sustain the Board’s contentions. From the record before us we cannot say that the conclusions of the trial court are incorrect. Certainly the evidence as disclosed by the record before us is neither clear nor satisfactory. From the record before us we cannot conclude that the Board proved by clear and satisfactory evidence, or at all, that defendants’ titles had been extinguished by adverse use.
No real problems of law are involved. The whole case depends on the factual situation. The trial court not only heard the testimony, observed the demeanor of the witnesses, but also had the advantage of a view of the area and visual observation of the maps, the use thereof, and the innumerable pointings of witnesses to points of presumed interest.
We find nothing in the record to hold as a matter of law that the findings of the trial court are contrary to or unsupported by the evidence.
The judgment is affirmed.
Mr. Justice Day and Mr. Justice McWilliams concur.