Lee J. PROPER, Plaintiff–Appellant,

v.

Craig E. GREAGER and Mediatrica T. Greager, Defendants–Appellees.

No. 90CA1840.

Colorado Court of Appeals,
Div. II.

Feb. 13, 1992.

dismissing his complaint against defendants, Craig E. and Mediatrica T. Greager. We reverse and remand.

In 1962, Paul and Elaine Haley and Larry and Shirley Walker acquired a tract of land of approximately 1.5 acres located in the town of Norwood. The Haleys and Walkers moved a building onto the northern portion, which became the Maverick Cafe. The Haleys lived in a mobile home on the southern portion of the land.

In 1964, the tract of land was divided. Proper bought the southern parcel, which included the Haleys' mobile home, and the Haleys conveyed their interest in the northern parcel (the Maverick property) to the Walkers. Thereafter, until they sold it in 1971, the Walkers owned and operated the Maverick Cafe. In 1985, it was purchased by defendants.

It is undisputed that, for over 25 years, Proper openly and continuously used portions of the parking lot on the Maverick property to gain access from the Norwood Main Street to Proper's mobile home, and garage, and also to move heavy equipment to an area next to a shed where he parked his car and stored firewood. None of the owners objected to Proper's use of the Maverick property until March 1990, when Proper asked defendants for written evidence of his easement so that Proper could complete the sale of his property. The defendants refused and began erecting a fence on the Maverick property to prohibit Proper's use. Thereafter, Proper filed this action.

In his amended complaint, Proper alleged, *inter alia*, that he had obtained easements to his mobile home, garage, and storage area by openly, notoriously, continuously, and adversely using the Maverick property 26 years for access. In their answer, defendants claimed that Proper's use of the Maverick property was by permission and license rather than by easement and that any license had been revoked in March 1990.

The parties stipulated to the following facts: (1) Proper had used the Maverick parking lot for 26 years to obtain access to

Ralph E. Miller, Montrose, for plaintiff-appellant.

Robert Korn, Telluride, for defendants-appellees.

Opinion by Judge ROTHENBERG.

In this action for an injunction to prevent interference with two easements and for damages for past interference, plaintiff, Lee J. Proper, appeals from the judgment

his property and for storage; (2) neither the former owners of the Maverick property nor defendants had ever objected to Proper's use of the parking lot until March 1990; and (3) Proper had used the Maverick property on a regular basis and was seen doing so by the former owners.

At the close of the evidence, the trial court ruled that Proper's use of the Maverick property's parking lot was permissive and did not ripen into an easement by prescription, implication, or estoppel. Accordingly, the trial court dismissed the complaint and entered judgment for the defendants.

## I.

### IMPLIED EASEMENT BY PRE–EXISTING USE TO MOBILE HOME AND STORAGE SHED

Proper first contends that the trial court erred in entering judgment for the defendants because the uncontroverted evidence established an implied easement to his mobile home and storage area by pre-existing use. We agree.

■ Four requirements must be met in order to establish an implied easement by pre-existing use: (1) unity and subsequent separation of title; (2) obvious benefit to the dominant tenement and a burden to the servient tenement which existed at the time of the conveyance; (3) evidence that the common owner used the premises in an altered condition long enough before the conveyance to show that the change was intended to be permanent; and (4) necessity for the easement. *Lee v. School District No. R–1*, 164 Colo. 326, 435 P.2d 232 (1967).

■ The uncontroverted evidence satisfied the first three requirements. The unity and separation of title elements were satisfied because Larry Walker and Paul Haley testified that the dominant and servient tenements were severed in 1964 when Proper bought the southern parcel. The second and third elements were satisfied by the testimony of Haley that, for the last two years of his ownership, he (the common owner) had used the vehicular access

route across the Maverick property to get from Main Street to the mobile home and shed on the southern parcel and that he parked his vehicles in an area north of the shed. At that time, the garage was not yet built.

Further, there was ample, undisputed evidence that the change was intended to be permanent. Haley testified that when he sold Proper the southern parcel, he intended to grant him the permanent right to use the pre-existing access route across the Maverick property.

The trial court found that Proper was not entitled to his easement because *Proper's* "use of the parking lot did not begin until after he obtained his lot." However, this was error because Proper only had to prove that the *common owner* used the premises in an altered condition long enough before the conveyance to show that the change was intended to be permanent. And the Haleys were the common owners, not Proper.

In opposing Proper's implied easement by pre-existing use in this appeal, defendants' main contention is that Proper failed to establish the necessity for the easement. Defendants rely on evidence that Naturita Street, which runs parallel to Proper's southern boundary, existed when Proper bought his lot. However, even if we assume this evidence is true, the presence of such an access route did not divest Proper of an implied easement based upon pre-existing use.

■ Although there are some similarities, an implied easement by pre-existing use is different than an easement by necessity. As this court noted in *Bromley v. Lambert & Son, Inc.*, 752 P.2d 595, 596 (Colo.App.1988): "An easement by implication is a true easement having permanence of duration and should be distinguished from a way of necessity which lasts only as long as the necessity continues." *See Story v. Hefner*, 540 P.2d 562 (Okla.1975).

In order to prove the element of necessity for an easement of necessity, the facts must show that there presently exists "a practical inability to have access any other

way than by way of necessity." *State Department of Highways v. Denver & Rio Grande Western R.R. Co.,* 757 P.2d 181 (Colo.App.1988), *aff'd,* 789 P.2d 1088 (Colo. 1990). *See also LeSatz v. Deshotels,* 757 P.2d 1090 (Colo.App.1988) (court concluded there was no easement of necessity where "landlocked" property owner in Cherry Hills Village could build bridge for access).

In contrast, in regard to an implied easement based on pre-existing use, a plaintiff need not show that, as a matter of law, it is physically impossible to reach the dominant estate. Rather, "where the word necessary appears in the cases, it has been used in the sense . . . of necessary for the use of the tenement in the state it is in when severed." *Bromley v. Lambert & Son, Inc., supra* (quoting 2 G. Thompson, *Thompson on Real Property* § 353 at 311 (1980)).

■ In denying Proper his easements, the trial court stated that "other means of access exist onto Mr. Proper's residence and into his garage." This was error, however, because with an easement by pre-existing use, necessity is determined at the time of the severance, not at the time of the court hearing.

■ Here, the uncontroverted testimony of Proper, Haley, and Walker established that *at the time of the severance in 1964,* Naturita Street did not provide a reasonable means of access to and from the southern parcel as an alternative to the existing route over the Maverick property. In fact, Haley and Proper testified that the southern boundary of the southern parcel was fenced when Proper acquired it. Thus, at the time the severance occurred, the route across the Maverick property was the *only access available to the southern parcel* and there was no road, no gravel, and no access from the south side of plaintiff's property.

Proper also testified that when he bought the parcel, there was an existing driveway some 20–feet long leading to the shed and that the only way of reaching it was across the Maverick property. And, according to Proper, he would not have purchased the southern parcel without a

right of access across the Maverick property.

In sum, here, the undisputed evidence established that at the time of the severance, Proper and his grantors viewed the pre-existing route across the Maverick property as the only available, reasonable access to plaintiff's mobile home and storage area. Therefore, the trial court erred in viewing the necessity requirement as of the trial date and concluding that the necessity requirement was not satisfied merely because "other means of access [now] exist onto Proper's residence and into his garage."

Since all four requirements were met at the time of the conveyance, an implied easement by pre-existing use arose and became permanent at that time and allows access to Proper's mobile home and storage area. *See Bromley v. Lambert & Son, Inc., supra.*

## II.

## IRREVOCABLE RIGHT OF ACCESS TO GARAGE

■ Next, Proper contends that the judgment also must be reversed because the uncontroverted evidence established that he acquired an irrevocable right of access across the Maverick property to his garage. He bought the property in June 1964, and erected the garage shortly thereafter. Thus, relying on *Gyra v. Windler,* 40 Colo. 366, 91 P. 36 (1907), he contends that after he finished building his garage in reliance on the right-of-way, his access right across the Maverick property became irrevocable. We agree that this alternative theory of relief also mandates reversal.

In *Gyra v. Windler, supra,* our supreme court held:

> While a parol license to enter upon real estate is generally revocable at the pleasure of the licensor, it is settled that such license cannot be revoked when the licensee, on the faith of the license, with the knowledge of the licensor, has expended his money and labor in carrying out the object of the license.

See also State Department of Highways v. Woolley, 696 P.2d 828 (Colo.App.1984) (if licensee detrimentally relies on representations by licensor as to duration of a license, license may become enforceable).

Here, the uncontroverted evidence established that, with Walker's knowledge, Proper built his garage with the entrance on the north side and that such entrance could be reached only by crossing the Maverick property. The garage measured 24 by 37 feet, cost $3,000, and contained a cement floor and double sliding doors 10 feet square. Proper testified that he would not have built the garage with this entrance unless he believed that a right of access existed across the Maverick property.

According to the undisputed evidence, Walker watched Proper construct his garage, saw the materials delivered by truck across the Maverick property, and did not object to this construction. Walker also saw Proper use the garage to store a backhoe, boat, and truck, and saw all those vehicles travel across the Maverick property.

Finally, it was undisputed that Proper built a new driveway from his garage to Main Street across the Maverick property and that, thereafter, Proper continuously maintained the driveway by mowing weeds, removing trash, and plowing snow.

In sum, the uncontroverted evidence established Proper's right of access across the Maverick property to his garage. Further, that right became enforceable and irrevocable by virtue of Proper's expenditures in reliance on the parol grant and his grantors' acquiescence. See Gyra v. Windler, supra; State Department of Highways v. Woolley, supra.

## III.

## PRESCRIPTIVE EASEMENTS TO MOBILE HOME, STORAGE AREA, AND GARAGE

As another alternative theory, Proper contends that the trial court erred in finding no prescriptive easements to his mobile home, storage area, and garage. As a matter of judicial economy, we also resolve this contention and, we agree with Proper that, in analyzing the issues surrounding the prescriptive easements, the trial court misapplied the burdens of proof.

■ A party who claims a prescriptive easement must prove by a preponderance of the evidence continuous, open, and adverse use of the easement for the statutory period of 18 years. See § 13–25–127, C.R.S. (1987 Repl.Vol. 6A); Gerner v. Sullivan, 768 P.2d 701 (Colo.1989).

■ Here, Proper's continuous and open use of the property for the statutory period was conceded. Thus, the dispositive issue became that of adverse use, and, on that issue, the trial court made these findings:

All of the prior owners of the Cafe and its parking lot permitted Mr. Proper to use the property as long as he wanted to. *The long-term use of another's land, such as was involved here, by itself, alone, is presumed to be permissive.* ... The facts do not rebut that presumption.

In *Trueblood v. Pierce,* 116 Colo. 221, 179 P.2d 671 (1947), our supreme court held that the use of a passageway upon another's property for the statutory period was presumed to be adverse, and opponents of the easement had to overcome that presumption. *See also Westland Nursing Home, Inc. v. Benson,* 33 Colo.App. 245, 517 P.2d 862 (1974) (where the evidence established use of easement for a time in excess of the statutory period, "there exists a presumption that such use was adverse.").

Two years after *Trueblood,* in *Allen v. First National Bank,* 120 Colo. 275, 208 P.2d 935 (1949), the supreme court created another presumption and held that when a property owner constructs a route over his own property, at his own expense, "this itself affords a very strong presumption that the use of the way by others is permissive rather than adverse." *See also Westland Nursing Home, Inc. v. Benson, supra (Allen* presumption limited to cases in which owner constructs passageway as well as uses it); *Horne v. Hopper,* 72 Colo. 434, 211 P. 665 (1922) (property owner con-

structed and used driveway; thus, neighbor's common use of driveway presumed to be permissive).

Here, since the undisputed evidence showed that the two driveways were not constructed, maintained, nor used by the owners of the Maverick property, the trial court erred in applying the *Allen* and *Horne* presumption and in requiring Proper to rebut that presumption. Further, since Proper met his initial burden of proving that he used the two driveways for egress and ingress to his mobile home, storage area, and garage for considerably longer than the statutory period, the trial court also erred in not giving Proper the benefit of the *Trueblood* presumption, thereby shifting the burden of proving permissive use to the defendants.

In *Auslaender v. MacMillan*, 696 P.2d 836 (Colo.App.1984), we rejected Auslaender's contention that MacMillan's use was not sufficiently adverse and noted that the claim of right to use need *not* be made by a hostile or antagonistic act.

There, the undisputed evidence showed that MacMillan, like Proper, used the road(s) in question in an open, notorious, and continuous manner for the prescriptive period. Also, the property owners were fully aware that MacMillan, like Proper, used the road(s) continually and openly. "The evidence is uncontradicted that no permission was ever sought or obtained for this use.... Such inaction constitutes acquiescence ... *[A]n easement may be acquired through the acquiescence or silence of a property owner.*" *Auslaender v. MacMillan, supra* (emphasis added).

Here, the parties stipulated that Proper used the Maverick property regularly for 26 years, that he was seen doing so by the former owners, and that neither the former owners nor defendants had ever objected to such use until March 1990. Thus here, as in *Auslaender*, "[no] one took any action at any time to curtail that use...."

■ Nor is the trial court's finding that Proper "lacked a fee-type interest" of any legal significance here. "An easement does not carry title to the land over which it is exercised and ... does not work a

dispossession of the landowner." *Skidmore v. First Bank*, 773 P.2d 587, 589 (Colo.App.1988). *See also Wright v. Horse Creek Ranches*, 697 P.2d 384 (Colo.1985).

■ The testimony was only disputed on one issue: whether Proper used the driveways under a claim of right or whether he sought and obtained permission for his use. Proper denied asking for or obtaining permission. Haley, who sold Proper the land and mobile home, denied giving permission to Proper and testified that: "[I]t was implied that [Proper] had the right to use that as an access in and out."

> Question (by counsel): [T]here was a conversation between you and Mr. Proper where you gave him permission to go across the Maverick parking lot?
> Answer (by Haley): I wouldn't say permission. I would say I gave him the right to go across it.... I don't feel I had the authority to give him permission on something that I was selling.
> Basically [Proper] said, I see you go in and out this way, will I be able to use it? And that was my belief he would be.

However, former owner Walker was inconsistent on the issue. On direct examination, when asked whether he had ever tried to stop or restrict Proper from using access across the Maverick property, Walker said, "No, I never did ... I had no right to stop them; it was their access to their home." And, on cross-examination, Walker also denied ever giving permission stating, "I was never asked for permission...."

> Question: Did you, along with Mr. Paul Haley, give permission to Lee Proper to have access to his property for as long as he wanted?
> Answer (by Walker): Well, I don't know that you could call it permission. He bought the property; that was the only access available to it. It was assumed that was his right to use that access.
> Question: My question is, and I won't use the word permission—
> Answer: No, I did not give permission.

Later, however, Walker was impeached by the introduction of a prior inconsistent statement in which Walker stated, in July

1990, that he and Haley "gave permission to Lee Proper to have access to his property for as long as he wanted."

None of the other owners had any conversations with Proper about access.

The task of weighing the credibility of witnesses is solely within the province of the trial court, and an appellate court cannot resolve the factual issue of whether Walker's inconsistent statements outweighed the other testimony that Proper's use was not permissive and were sufficient to rebut the *Trueblood* presumption of adverse use to which Proper was entitled. *See generally CJI–Civ.* 3.5 (1988 Supp.). Thus, in view of the errors of law referred to above, we would normally remand for a new trial with directions to the trial court. However, in light of our conclusions that Proper was entitled to his easements on alternative grounds, we need not do so here.

## IV.

### INJUNCTION AND DAMAGES

Inasmuch as we conclude that judgment for defendants was in error, we also address the trial court's ruling that it could not award both an injunction and damages in the same action.

█ Generally, an injunction is a preventive and protective remedy aimed at future acts. It is not intended to redress past wrongs. *Snyder v. Sullivan,* 705 P.2d 510 (Colo.1985). However, in a proper case, that is, if a plaintiff does not receive a double recovery, a court may issue an injunction to open a blocked easement, *City of Englewood v. Miller,* 155 Colo. 47, 392 P.2d 591 (1964) and, if necessary to grant an injured party complete relief for past interference with his easement, the court may also award monetary damages. *See Allison v. Smith,* 695 P.2d 791 (Colo.App. 1984); *Schmidt v. Parker Land & Cattle Co.,* 517 P.2d 870 (Colo.App.1974) (not selected for official publication). Thus, we agree with plaintiff that, under proper circumstances, he may be entitled to damages. *Cf. Denver v. Historic Denver, Inc.,* — P.2d — (Colo.App. No. 90CA2164,

January 16, 1992); *People v. McIntosh,* 695 P.2d 795 (Colo.App.1984).

The judgment is reversed, and the cause is remanded to the trial court for entry of a judgment granting plaintiff injunctive relief and for a hearing on damages.

TURSI and JONES, JJ., concur.