No. 16,082.

ALLEN *v.* FIRST NATIONAL BANK OF ARVADA.
(208 P. [2d] 935)

Decided July 11, 1949.

Mr. EMORY L. O'CONNELL, for plaintiff in error.

Mr. CARL CLINE, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

CHARLES E. ALLEN brought an action against the First National Bank of Arvada to obtain a decree quieting title to an easement over certain of the bank's property in Arvada, Colorado, and for mandatory and other injunctive relief. Upon trial to the court, judgment was entered in favor of defendant, to review which plaintiff has sued out a writ of error.

We will herein refer to the parties as they appeared in the trial court, namely, as plaintiff and defendant.

In the complaint it is alleged that plaintiff is the owner and in possession of lots 4, 5 and 6, First Addition to Arvada, and that defendant is the owner of lots 1, 2 and 3 in the same addition except a portion of lot 1 not here involved. It is further alleged that prior to the 3rd day of August, 1918, plaintiff's grantor, and

since that date plaintiff, has "continuously, openly and notoriously traveled over, occupied and claimed the right to use, travel over and occupy a certain strip of ground used as an alley, or driveway for ingress to and egress from the remainder of plaintiff's said property, which said strip is more particularly described as follows: * * *" And further that the alley so used was well marked and clearly visible and that defendant and its predecessors in title well knew at all times of the adverse user of said strip of ground and that by reason of said adverse use plaintiff is now the owner and entitled to possession and use of an easement over and across plaintiff's said lots. It is further alleged that on the 15th day of October, 1946, defendant placed barriers across said alley or driveway, thereby completely depriving plaintiff of ingress to and egress from his property, and, claiming the right so to do, it now asserts "that the plaintiff has no right, title or interest in or to the use or enjoyment of said alley or driveway" and refuses plaintiff and those claiming through him the right to the use of the same.

In its amended answer defendant denied that plaintiff has acquired an easement over its lots and alleged that prior to 1924 there was no means of ingress or egress over defendant's property and that previous to said 1924 the only means of ingress and egress to the rear of plaintiff's premises was by a certain way, still existing, to the east of plaintiff's property and also in part over and through lot 7, then and until 1945 owned by plaintiff and which is now being used by plaintiff as a means of ingress to and egress from his property under a reservation contained in plaintiff's deed to lot 7, reading, "The right is also reserved by the grantor [plaintiff] herein for the use as a driveway of the roadway now at the rear of said lot 7." It is further alleged that in 1924 defendant opened a way for ingress to and egress from the street lying directly westerly of its property for the convenience of defendant and

those claiming by or under it, and that plaintiff's use of said way from 1924 until the barriers were erected across the same on or about October 15, 1946, was by permission of defendant. It was further alleged that barriers were erected across the easterly end of the alleyway on defendant's property, that it is the fee owner thereof and that plaintiff has acquired no easement or right of way therein by prescription or otherwise. Further that defendant denies any right in plaintiff to the use of the alleged alley or driveway constructed by defendant on its property and admits that it will continue to deny plaintiff's right to the use and enjoyment of the same.

The property here involved is located at the southeasterly corner of Wadsworth and Grandview Avenues in Arvada, Colorado. The course of Wadsworth Avenue is north and south and that of Grandview Avenue is generally east and west. Beginning at the corner of said avenues, the lots are numbered easterly, so far as here involved, from 1 to 7, inclusive, and are intersected on the southerly side thereof by the right of way of the Colorado and Southern Railway Company which at this point follows a northeasterly course so that lot 7 is but slightly over eighty-eight feet in length on the easterly side thereof, lot 1 being approximately 125 feet on the easterly side, and the alley or driveway here in question is delineated on plaintiff's exhibit as seventeen feet in width from north to south and approximately seventy-five feet in length easterly and westerly across defendant's three lots. Defendant's bank is located on lot 1, and lots 2 and 3 have been occupied by its tenants. Plaintiff is the owner of lots 4, 5 and 6, and until October 6, 1945, was the owner of lot 7, and now is the owner of that portion of said lot 7 hereinbefore specifically noted as a reservation in his deed to that lot of that date, and has himself, or through his various tenants, occupied said premises since he acquired title thereto on August 3, 1918.

The witnesses agreed generally that about 1922 or 1923 Wadsworth Avenue was paved, and in preparation therefor a grade was established two or more feet lower than the existing sidewalk on the westerly side of defendant's bank building, leaving an abrupt drop in the so-called driveway or alleyway which made it impossible for its use by wagons or automobiles, and thereafter and until the westerly end of the driveway was lowered and a concrete apron and sidewalk placed at said end, it was impossible to gain entrance to the rear of either plaintiff's or defendant's property by use of the alley across defendant's lots. Until the apron was installed, those having occasion to enter the rear of plaintiff's and defendant's properties came along the railroad right of way, entered the rear of lot 4 owned by plaintiff, and then turned easterly or westerly along the alleyway as occasion required. Plaintiff's tenant in the building on lot 4, sometime in 1923 or 1924, constructed a barrier across the westerly side of lot 4 so as to prevent defendant and those desiring entrance to the rear of its bank or stores from using the temporary roadway over plaintiff's property to gain entrance to the rear of defendant's property, and it was then that defendant did the necessary work in lowering the westerly end of the alleyway, placing the apron thereon, and thereupon plaintiff's tenant removed the barrier on the westerly side of lot 4. Thereafter those persons having occasion to transact business with defendant or its tenants and using the alleyway for that purpose were permitted to enter plaintiff's property, and plaintiff and those having occasion to transact business with him or his tenants in the rear of his property were permitted to travel over the alley across defendant's property.

There is evidence that when those persons having business to transact with defendant or its tenants were using automobiles in connection with that business, the alleyway back of defendant's property was impassable to those desiring to enter with automobiles for the pur-

pose of transacting business with plaintiff or his tenants, in which event those transacting business with plaintiff or his tenants were obliged to delay entrance to his property until the automobiles used in connection with defendant's or its tenants' business either entered the vacant property back of plaintiff's buildings, turned around, and came on to Wadsworth Avenue or until those transacting business with defendant or its tenants backed their vehicles out of the alleyway onto Wadsworth Avenue. There is evidence that at times of annual carnivals or festivals signs were posted on the alleyway at Wadsworth Avenue and a barricade erected advising the public that the alleyway was private property. The evidence is undisputed that the alleyway on defendant's property was maintained by defendant, and the expense of lowering the westerly end thereof and constructing the apron and sidewalk was borne entirely by it. Evidence was admitted over the objection of plaintiff that the value of defendant's property, the use of which is sought by plaintiff, is $5,000, and evidence was introduced, without objection, that plaintiff now has a way of ingress to and egress from his property over the rear and easterly side line of lot 7, formerly owned by plaintiff, and which was deeded by him in 1945 with certain reservations.

Defendant called witnesses who testified that frequently persons having business with it or its tenants so obstructed the alleyway on its lots to such an extent that those desiring to enter the alleyway to reach plaintiff's tenants were obliged to delay entrance until such time as the obstruction had been removed. Defendant also offered evidence to the effect that on occasions subsequent to about 1925, when, at its own expense, it made necessary repairs on Wadsworth Avenue and the sidewalk to afford entrance to the alleyway, signs were placed at the alleyway to the effect that it was private property and advising persons to "keep out." The president of defendant bank testified that subsequent to 1928

he had a conversation with one of plaintiff's tenants with reference to the use of the alleyway over defendant's property; that at the tenant's request it gave him permission to use the alleyway; and that the tenant thereafter continued such use for approximately ten years without mentioning a claimed right either to a right of way or a prescriptive easement. Sometime in 1946 plaintiff and defendant's president had some discussion concerning the use of the alleyway over defendant's lots, as a result of which there was prepared and submitted to plaintiff a revocation agreement which plaintiff refused to execute because in his judgment the alleyway would be more conveniently located on another portion of plaintiff's and defendant's property. Approximately six months later, according to the testimony of defendant's president, plaintiff suggested that, "We better put that fence in we are discussing; I think the town is going to condemn an alley through." Defendant's president said, "All right, we will put it in." Continuing, he said, "So we went out and looked at it and we decided—I told Mr. Allen it was perfectly all right and those center posts four feet apart, we are taking them out and his tenants could have ingress and egress." According to this witness, because of plaintiff's dissatisfaction with the barrier or fence which defendant had erected, defendant then suggested that the barrier or fence be removed, but passage over defendant's lots would be forbidden one day in each year, which suggestion was not agreeable to plaintiff, who then said, "I have a right through there." The witness then said, "Mr. Allen, that is the first time I have heard anybody express that. The fence will stay as it is."

With reference to the permissive use of an alleyway over defendant's property, its president testified: "Q. As a matter of fact, that does not interfere with your [plaintiff's] tenants—you are still willing to let them go through there if they don't have a claim of right? A. Absolutely. They can have all the traffic they want

until we put up a new building. The way modern banks are built they have parking space and drive in around there and we can't afford to have any easement across there, but we are perfectly willing, and if it didn't interfere with that they could still go, but without having them establish a drive across our property they can force our customers off of."

The pertinent parts of the court's findings are as follows:

"That there was some use of the areaway in question by the public between 1908 and 1922, including the tenants of plaintiff. That during the "horse and buggy days" this use was not very great because traffic and business was light.

"That in 1922 the public street known as Wadsworth Avenue was paved. That the necessary grading of the street for that paving cut off the entry to the areaway in dispute here and left a bank or jump-off about one and one-half or two feet high at the edge of the pavement at the former place of entrance.

"That the tenants of both plaintiff and defendant used another entrance during the paving construction and for a long time thereafter.

"That the plaintiff's tenant, Scott, built a fence in 1923 or 1924 across the west side of the plaintiff's areaway so that the defendant's tenants could not use the alleyway, then in use, to reach their premises.

"That the defendant was thereby forced to and did construct a drive-in or alley-way into its rear yard for the use of its tenants by grading down the approach from Wadsworth Avenue, building a concrete apron about twelve feet wide, and graveling the back yard or areaway.

"That all of this work was done at the defendant's expense and the plaintiff nor his tenants have never shared the expense nor assisted in maintaining the driveway.

"That the plaintiff's tenant, Scott, thereafter tore down

his fence heretofore mentioned and all of the tenants began using the Wadsworth driveway.

"That the evidence shows that when defendant's tenants had their trucks parked in the rear areaway or were loading or unloading there, the plaintiff's tenants had to wait until the driveway was cleared before they could go in or out. There is no evidence of any remonstrance or dispute between the parties or tenants about this inconvenience.

"That about 1938 plaintiff's tenant, Scott, died and an alleyway was then made through the east end of plaintiff's property which is still in existence.

"That in 1946 the defendant, through its president, Mr. Stenger, first learned that the plaintiff claimed an adverse right to use the entryway from Wadsworth Avenue.

"That defendant constructed a barrier across the east end of its areaway immediately and stopped plaintiff's tenants from passing through from the Wadsworth Avenue side.

"From these facts the Court, concludes, determines and decrees:

"That there was an interruption of the use from 1922 to 1924.

"That the defendant thereafter opened the. way for its own use and benefit and the use of its tenants.

"That the subsequent initiation of the use by the tenants of the plaintiff was either permissive or a trespass by the said tenants because there is no evidence that any such right-of-way or easement was ever described or mentioned in the leases under which the tenants of plaintiff held.

"That the subsequent use of the backyard for an entryway by plaintiff's tenants was permissive because the evidence shows that such use was subordinate to the use and convenience of the defendant's tenants and was so regarded by all of the tenants as shown by their conduct.

"That the plaintiff has failed to sustain the burden of proof necessary to overcome the presumptions of law that favor the holder of the legal title in a case of this nature.

"That the complaint should be dismissed and the defendant have judgment for its cost."

The specifications of points are ten in number, but plaintiff's counsel has obligingly conceded that there is but one general question involved and that is whether the court erred in determining that plaintiff's right to a prescriptive easement had not been established under the law and evidence.

The undisputed evidence is that the defendant bore the entire cost of providing the apron and sidewalk on Wadsworth Avenue, as well as graveling that part of the alleyway on lots 1, 2 and 3, and, because of the barricade erected by plaintiff's tenant, this was necessary for the use and enjoyment of defendant's property.

The general rule seems to be that where one constructs a passageway over his own property, at his own expense, and thereafter it is utilized by others, their use is presumed to be permissive and a neighborly indulgence, and, being permissive in its inception, continues to be such until that permissive use is changed to the knowledge of the owner to an adverse use. *White v. Kamps,* 119 Mont. 102, 171 P. (2d) 343; *Jensen v. Gerrard,* 85 Utah 481, 39 P. (2d) 1070; Jones on Easements, p. 225, §280; Washburn's Easements and Servitudes (4th ed.), p. 132, §86; 28 C.J.S., p. 668, §18 (2).

It also is a general rule that the use of an easement for the statutory period, unexplained, will be presumed to be under a claim or assertion of right, and, therefore adverse (*Horne v. Hopper,* 72 Colo. 434, 211 Pac. 665; *Trueblood v. Pierce,* 116 Colo. 221, 179 P. [2d] 671; 171 A.L.R., p. 1280; Jones on Easements, p. 156, §186; Washburn's Easements and Servitudes, p. 156). This rule is a presumption only and subject to explanation and rebuttal. Circumstances surrounding the use

may themselves afford the explanation and entirely defeat and overcome the presumption. Where it is shown that the alleged easement consists of a way which is used by the owner of the land for his own convenience and purpose, this itself affords a very strong presumption that the use of the way by others is permissive rather than adverse. *Horne v. Hopper, supra; Dooling v. Dabel,* 82 Calif. App. (2d) 417, 186 P. (2d) 183; *White v. Kamps, supra; Cobb v. Avery,* 75 N.Y.S. (2d) 803; 28 C.J.S., p. 668, §18 (2); Washburn's Easements and Servitudes (4th ed.), p. 151; 170 A.L.R., p. 825. It will be remembered that a barrier was erected on the westerly side of plaintiff's land which prevented defendant's use of an entrance over plaintiff's lot 4 to the rear of its premises, and that this barrier remained intact and prevented defendant's use of the entrance just mentioned until such time as defendant, at its own expense, provided an entrance to its own lands on Wadsworth Avenue. Then, and then only, was the barrier on plaintiff's land removed and the use of the alleyway resumed. This interruption in the use of the alleyway, with the subsequent resumption of the use, clearly indicated the position then taken by plaintiff to be that if the defendant did not permit the use of the alleyway over its property plaintiff would not consent to the use of the passageway over his property adjoining. It evidenced a permissive use rather than a claim or right to the use of the alleyway over defendant's premises. Furthermore there is evidence that when at times the alleyway was being used in connection with defendant's or its tenants' business, plaintiff's tenants were obliged to either wait until the alleyway was cleared or park their automobiles on Wadsworth, and there was positive testimony that at times there were signs placed on defendant's property to the effect that it was private property, and at these times the entrance to the alleyway on Wadsworth was barricaded. On an occasion during a festival in Arvada, when the alleyway over defendant's lots was

barricaded and a sign posted declaring it to be private property, one of the defendant's witnesses was told by a Mr. Scott, who was a tenant of the plaintiff, that he had made arrangements with defendant, by which defendant gave him permission to use the alleyway at the rear of its building.

■ ■ If plaintiff's claim to a prescriptive easement is to be sustained, it was incumbent upon him to establish by clear and convincing evidence that he was in adverse possession of the alleyway over defendant's lots for the statutory period. All presumptions are in favor of the trial court's findings, and the record should be reviewed in the light most favorable to the successful party. *Milner v. Ruthven,* 116 Colo. 22, 178 P. (2d) 417. Here, indulging this presumption, the trial court must have found from the evidence that plaintiff had not been in actual, visible, exclusive, hostile use and possession of the alleyway in question, and that any use and possession thereof was not under a claim of right and was not continuous during the entire time necessary to a bar under the statute of limitations, and we find from the record, as we have shown, that there was relevant and competent evidence therein to support the trial court's findings and judgment.

■ Plaintiff alleged that defendant was the owner of lots 1, 2 and 3, and the undisputed evidence is that if a permissive easement is established over the alleyway it will deprive defendant of the use and possession of its property which, according to the evidence, is of a reasonable marketable value of $5,000. From aught that appears in the record, plaintiff's use and enjoyment of the alleyway over defendant's property is at least as consistent with a permissive as an adverse use, and, as we have stated, the rule is that under such circumstances, in order to establish and have decreed a prescriptive easement, the evidence must be clear and convincing. Defendant, according to the record, is not seeking to deprive plaintiff and his tenants of the use of

the passageway and will not do so unless and until such time as it determines to utilize the alleyway for the construction of additional buildings. Its neighborly attitude in thus permitting the use of the alleyway ought not to be construed against it unless there is a compelling reason in law obliging such a construction, and this we do not find.

■ ■ It may be said that a prescriptive easement is an unopposed and continuous trespass for the statutory period of years. The trial court, in its decree, found, "That the subsequent initiation of the use by the tenants of the plaintiff was either permissive or a trespass by said tenants because there is no evidence that any such right of way or easement was ever described or mentioned in the leases under which the tenants of plaintiff held." It is not incumbent upon us to determine here whether the reasons which prompted the trial court to enter its judgment are legally sound, if a correct judgment is pronounced. *Noble v. Canon City*, 73 Colo. 374, 215 Pac. 867.

The judgment is affirmed.