2014 COA 170

**LR SMITH INVESTMENTS, LLC, a/k/a Smith Ranch, Plaintiff–Appellee,**

v.

**Alexandra M. BUTLER, Defendant–Appellant.**

Court of Appeals No. 13CA1579

Colorado Court of Appeals,
Div. VII.

Announced December 18, 2014

Jeremy J. Snow, Cedar City, Utah, for Plaintiff–Appellee

Mallon Lonnquist Morris & Watrous, Reed F. Morris, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE BERGER

¶ 1 In this prescriptive easement case, defendant, Alexandra M. Butler, appeals the trial court's judgment confirming two prescriptive easements in favor of plaintiff, LR Smith Investments, LLC (Smith), across agricultural lands owned by Butler.

¶ 2 Butler contends that the trial court committed four errors that require reversal: (1) applying a presumption of adversity in favor of Smith; (2) holding that Butler was required to show the existence of an actual agreement between the parties to establish permissive entry; (3) rejecting the "neighborly accommodation" doctrine; and (4) failing to quiet title in favor of Butler because the period of adverse use was physically interrupted before accrual of eighteen years.

We address and reject each of these contentions and therefore affirm.

## I.   Relevant Facts

¶ 3 Smith claims prescriptive easements for ingress and egress across two roads (Roads) owned by Butler. The Roads cross a ranch owned by Butler northwest of Craig in Moffat County, Colorado.

¶ 4 The Smith ranch has been owned by Smith and its predecessors since at least 1954. The Smith ranch is located east of Moffat County Road 3 (CR 3) and borders the Butler ranch at several points. The Butler ranch is located mostly west of CR 3, but Butler also owns two parcels of land east of CR 3. The following map shows the Smith and Butler ranches and the Roads.

¶ 5 The Roads both begin on the east side of CR 3. The northerly road travels northeast from CR 3, crosses a portion of the Butler land, and terminates in the Smith ranch. The southerly road travels east/northeast from CR 3, also crosses a portion of the Butler ranch, and terminates in the Smith ranch.

¶ 6 The evidence presented by Smith established that both Roads were used for many years by Smith to reach portions of the Smith ranch used for grazing livestock and hunting. This evidence was not seriously contested by Butler.

¶ 7 The trial court found that Smith and its predecessors continuously, openly, and notoriously used the Roads from the mid–1950s until late 2011, when Butler dug ditches preventing access to the Roads and thereby precipitated this litigation.

¶ 8 Based on this finding, the court concluded that Smith was entitled to a presumption of adversity, which required Butler to prove permissive use sufficient to overcome the presumption. The resolution of this issue centered on actions taken by the parties or their predecessors in the 1950s.

¶ 9 In the early 1950s, Smith built a fence across a portion of Butler's land. Butler's predecessor did not object and instead, the parties reached an arrangement whereby Smith built additional fences along other parcels of Butler's property that bordered CR 3. There was some evidence presented that in exchange for building the fences, Smith received the right to graze a 160–acre parcel owned by Butler for a ten-year period. Butler contended at trial that this evidence established that the parties' predecessors made an agreement that encompassed the use of the Roads, and thus Smith's use of the Roads was permissive, a fact which would prohibit a determination that Smith's use of the Roads was adverse (or overcome any presumption of adversity).

¶ 10 Conversely, Smith contended that although it appeared Butler acquiesced to Smith's building of the fences and use of the Roads in the 1950s, no evidence tied such acquiescence to an agreement regarding the use of the Roads and thus permissive use was not established. There was no written memorialization of any 1950s' agreement.

¶ 11 Resolving this conflicting evidence, the trial court found that neither Smith nor its predecessors had obtained permission to use the Roads in the 1950s, and specifically that Butler's failure to object to the fence or Smith's use of the Roads did not render the use permissive.

¶ 12 The court found that the only evidence of permission for Smith to use the Roads was a conversation between the parties or their predecessors in the 1980s.

However, the court found that prior to that date Smith had adversely used the Roads for approximately thirty years, well more than the eighteen-year prescriptive period. Relying on *Clinger v. Hartshorn*, 89 P.3d 462 (Colo.App.2003), the court concluded that any 1980s' agreement, entered into after more than eighteen years of open, notorious, and adverse use, did not destroy the right to a prescriptive easement.

¶ 13 Accordingly, the court held that Butler did not meet her burden to overcome the presumption of adversity and Smith had satisfied the elements for prescriptive easements to use the Roads. The court quieted title to Smith's nonexclusive right to use the Roads for ranching and agricultural purposes, to access the Smith property for hunting and guiding purposes, and for all other similar uses.

## II. Applicable Law—Prescriptive Easements

¶ 14 A prescriptive easement is a nonexclusive right to use the land of another for a specified purpose—usually, but not always, ingress and egress—after adverse use of the land for that purpose for the period specified by law. *See Matoush v. Lovingood*, 177 P.3d 1262, 1265 n.2 (Colo.2008); *Wright v. Horse Creek Ranches*, 697 P.2d 384, 387 (Colo.1985); *Alexander v. McClellan*, 56 P.3d 102, 105 (Colo.App.2002); Restatement (Third) of Prop.: Servitudes §§ 2.16(1), 2.17, 2.17 cmt. g (2000). In Colorado, a party acquires a prescriptive easement when the prescriptive use is (1) open or notorious; (2) continuous without effective interruption for at least eighteen years; and (3) either adverse or pursuant to an attempted but ineffective grant. *Matoush*, 177 P.3d at 1270; *Maralex Res., Inc. v. Chamberlain*, 2014 COA 5, ¶ 20, 320 P.3d 399.[1]

---

1. In 2008, the General Assembly enacted House Bill 1148, codified at section 38–41–101(3), (4), (5), C.R.S.2014, which modified some of the common law requirements for the doctrine of adverse possession, a doctrine related to prescriptive easements. Ch. 190, sec. 1, § 38–41–101, 2008 Colo. Sess. Laws 668–70. House Bill 1148 does "not apply to the creation, establishment, proof, or judicial confirmation or delinea-

tion of easements by prescription, implication, prior use, estoppel, or otherwise." § 38–41–101(4). However, prescriptive easements remain governed by the eighteen-year limitation of action period prescribed in section 38–41–101(1). Other requirements for prescriptive easements are contained in the common law decisions of the Colorado Supreme Court and this court.

¶ 15 If a claimant establishes that its use of another's property was continuous and open or notorious for eighteen years or more, the claimant is entitled to a presumption that the use was adverse. *Trueblood v. Pierce,* 116 Colo. 221, 233, 179 P.2d 671, 677 (1947). The landowner must then present evidence to overcome the presumption, such as by showing that the use was permissive. *Id.; see also Weisiger v. Harbour,* 62 P.3d 1069, 1072 (Colo.App.2002). If the landowner fails to do so and the other elements of a prescriptive easement are met, the trial court must determine that a prescriptive easement exists. *Trueblood,* 116 Colo. at 233, 179 P.2d at 677; *Irvin v. Brand,* 690 P.2d 1283, 1284 (Colo.App.1984).

¶ 16 Adverse use need not be established by a hostile or antagonistic act and thus, if all other elements are met, an easement may be acquired through the acquiescence or silence of a property owner. *Auslaender v. MacMillan,* 696 P.2d 836, 838 (Colo.App.1984), *declined to follow on other grounds by Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989). Accordingly, such acquiescence or silence with respect to a claimant's use of the property does not constitute permission to use the property and thus does not overcome the presumption of adversity. *See id.*

### III. Application of the Law

#### A. The Presumption of Adversity

¶ 17 The trial court made several critical findings of fact in this case. First, the court found that Smith's use of the property was open and notorious for a period in excess of eighteen years. While there was conflicting evidence presented on this issue, this finding is supported by the record and therefore we must accept it on appeal. *Maralex Res.,* ¶ 21. Based on that factual finding, the court applied well-settled Colorado law that presumes Smith's use was adverse, which required Butler to present evidence sufficient to overcome the presumption of adversity. *Gleason v. Phillips,* 172 Colo. 66, 70–72, 470 P.2d 46, 48 (1970); *Trueblood,* 116 Colo. at 233, 179 P.2d at 677; *Weisiger,* 62 P.3d at 1072. The court, again with record support, found that Butler failed to present sufficient

evidence to rebut the presumption of adversity.

¶ 18 We reject Butler's reliance on *Miller v. Bell,* 764 P.2d 389 (Colo.App.1988), for the proposition that no presumption of adversity should have been applied in this case. Although *Miller* involves the doctrine of adverse possession rather than the law of prescriptive easements, it could apply to an analogous prescriptive easement case because, other than in situations of attempted but ineffective grants, "the same requirement of adversity applies to acquiring easement . . . rights by prescription as to the acquisition of title by adverse possession." *Lobato v. Taylor,* 71 P.3d 938, 970–71 (Colo.2002) (Kourlis, J., dissenting); *see also* 2 Cathy Stricklin Krendl, *Colorado Practice Series: Methods of Practice* § 65:5(3.1) (2014) ("By modern decisions, prescription is recognized as a doctrine analogous to the doctrine of adverse possession.").

¶ 19 In *Miller,* this court concluded that the presumption of adversity was inapplicable in that case because "[t]he presumption of adversity arises only if permissive entry is not at issue," and the trial court had determined that the claimant's use of the property derived from permission given by the landowner's predecessors. *Id.* Butler relies on this quoted language.

¶ 20 Although the statement that "[t]he presumption of adversity arises only if permissive entry is not at issue," *id.* appears to support Butler's argument that a claimant is not entitled to the presumption if it merely contends that the use was permissive, the court's statement must be read in context. Immediately after making that statement, the *Miller* court quoted the following language from *Cox v. Godec,* 107 Colo. 69, 75, 108 P.2d 876, 879 (1940):

"Where the original entry on land . . . was by permission or license from the true owner . . . possession will, in the absence of an explicit disclaimer of subservience, be presumed to continue as it began; and there is no presumption arising from mere possession, however long it may continue, that the holding is adverse."

*Id.*Additionally, the trial court in *Miller* found, as fact, that the initial entry onto the owner's land was permissive, and thus "permissive entry" was not merely "at issue" but actually established. *Id.*

¶ 21 We therefore believe that the correct interpretation of *Miller* (and the only reading consistent with *Trueblood*) is that the presumption of adversity does not apply when initial permissive use is actually established. Nothing in *Trueblood* limits the application of the presumption of adversity to those cases in which there is absolutely no assertion or evidence of permissive use; to the contrary, *Trueblood* applies the presumption of adversity in every case where the use is open or notorious for the statutory period. Limiting the application of the presumption of adversity to those cases in which the owner does not contend the use was permissive essentially vitiates the presumption: if there is no contention of permissive use, there is no need or purpose for a presumption of adversity.

¶ 22 Accordingly, the district court did not err by declining to apply *Miller* because, unlike in *Miller*, the court found that Butler *did not* establish that Smith's initial use of the Roads was permissive.

¶ 23 We also reject Butler's contention that the district court erred in concluding Smith was entitled to a prescriptive easement without giving notice or express disclaimer to Butler terminating Smith's alleged permissive use. If permissive entry is established, the claimant must show that he or she gave notice or express disclaimer to the owner to show adversity. *See Cox*, 107 Colo. at 75, 108 P.2d at 879. But like her misinterpretation of *Miller*, Butler's argument conflates a mere allegation of permissive use with a court's determination that the use was, in fact, permissive. When, as here, a court determines, with record support, that the initial use of the land was adverse, there is no requirement that the claimant give notice or express disclaimer terminating the alleged permissive use.

## B. The Necessity of an Actual Agreement to Prove the Use Was Permissive

¶ 24 Contrary to Butler's argument that the district court improperly required an "actual agreement" between the parties to show permissive use of the land, the court explicitly and correctly recognized that "permission ... can be implied through the words or acts of the owner of the servient estate." *See Butterfly Realty v. James Romanella & Sons, Inc.*, 93 A.3d 1022, 1032 (R.I.2014) ("[I]mplied permission defeats a claim for a prescriptive right."). The court thus did not base its finding that the presumption of adversity applied, and its concomitant determination that *Miller* did not apply, on an erroneous requirement that only "an actual agreement" between the parties demonstrates permission.

¶ 25 Moreover, the court's finding that there was no agreement, explicit or implied, between the parties that established that Smith's use of the Roads was permissive is supported by the record. "Whether use is adverse or permissive is a question of fact, and, as such, is within the province of the fact finder." *Maralex Res.*, ¶ 21. After hearing all the evidence presented, the court found that the use of the Roads was not permissive and thus Butler had not overcome the presumption of adversity. Because these factual determinations are supported by the record, we must uphold them. *See id.* While there was some conflict in the evidence regarding whether the parties had entered into an agreement in the 1950s and, if so, whether that agreement applied to use of the Roads, we are not at liberty to re-evaluate conflicting evidence and set aside the court's findings when they are supported by the record. *See Segelke v. Atkins*, 144 Colo. 558, 560, 357 P.2d 636, 637–38 (1960), *superseded by statute on other grounds as stated in Gerner v. Sullivan*, 768 P.2d 701.

¶ 26 Butler also argues that the following findings and conclusions of the trial court concerning the existence of an agreement between the parties contradict each other:

- One witness testified that Smith had built the fence in the 1950s in exchange for the opportunity to graze on Butler's property for ten years;
- The trial court received no evidence to establish that the parties had an actual agreement;

- The evidence was consistent that before 1988, Smith and its predecessors neither sought nor obtained express permission to use the Roads; and

- The only evidence of actual permission being given to Smith to use Butler's property, and by extension the Roads, was a conversation which occurred in the 1980s.

We disagree.

¶ 27 The first "finding" is merely the trial court's recitation of a witness' testimony, which the court was free to reject because "[a] trial court, as fact finder, can accept or reject all or part of any witness' testimony." *Kim v. Grover C. Coors Trust,* 179 P.3d 86, 96– 97 (Colo.App.2007) (internal quotation marks omitted). The context of the second finding or conclusion makes clear that it addressed Butler's contention that the parties agreed in the 1950s that Smith could use Butler's property in exchange for building the fence. Accordingly, the third and fourth findings or conclusions, which discuss the parties' actions in the 1980s, are not inconsistent with the second.

### C.   Acquiescence Does Not Demonstrate Permissive Use and Does Not Rebut the Presumption of Adversity

¶ 28 To the extent that Butler argued that her predecessors' acquiescence in the use of the property by Smith rendered the use permissive, the trial court correctly rejected this contention.   That determination was compelled by Colorado law, which, as discussed above, holds that "an easement may be acquired through the acquiescence or silence of a property owner." *Auslaender,* 696 P.2d at 838.

### D.   The Doctrine of "Neighborly Accommodation"

¶ 29 For similar reasons, the district court also correctly rejected Butler's assertion that it should apply a doctrine of "neighborly accommodation" to rebut the presumption of adversity.

¶ 30 Some jurisdictions recognize that a presumption of adverse use may be overcome, and a counter-presumption that the initial use was permissive is created, by evidence that "a custom existed in the neighborhood for neighborly accommodation by permitting use of neighboring land for access." Restatement (Third) of Prop.: Servitudes § 2.16 cmt. g (2000); *see also Larsson v. Hurst,* No. F046355, 2005 WL 2293034, at *3 (Cal.Ct.App. Sept. 21, 2005) (unpublished opinion).   We disagree with Butler that the doctrine of neighborly accommodation applies in this case.

¶ 31 First, to the extent other jurisdictions apply the doctrine of neighborly accommodation to "any situation in which it is reasonable to infer that the use was permitted by neighborly sufferance and acquiescence," *Crites v. Koch,* 49 Wash.App. 171, 741 P.2d 1005, 1010 (1987), that application of the doctrine is inconsistent with Colorado law. *See Auslaender,* 696 P.2d at 837.   Rather, existing state law dictates that Colorado must follow those states that have held that "[a] use does not necessarily become permissive simply because the property owner does nothing to prevent it out of indifference, laziness, acquiescence, or neighborly accommodation." *Gulas v. Tirone,* 184 Ohio App.3d 143, 919 N.E.2d 833, 840 (2009) (internal quotation marks omitted).   Accordingly, "[a] mere claim of neighborly accommodation is not proof of permission." *Reed v. Piedimonte,* 138 A.D.2d 937, 526 N.Y.S.2d 273, 274 (1988).

¶ 32 Second, we need not decide whether Colorado would recognize the doctrine of neighborly accommodation under any circumstances, such as when there is evidence of a local custom concerning access across another's land. *See, e.g.,* 28A C.J.S. *Easements* § 183 (2014) ("Under some authority, evidence of a local custom of neighborly accommodation or courtesy .... gives rise to an inference of permission which may be supported by additional evidence, or negated thereby.").   Here, Butler presented no evidence of any customs in the neighborhood for neighborly accommodation.   Rather, to negate the presumption of adverse use, Butler relied solely on the alleged 1950s' agreement and Butler's acquiescence in Smith's use of the property.   As discussed above, the trial court rejected the former as a matter of

fact and the latter is inconsistent with Colorado law. *See Auslaender*, 696 P.2d at 837. Moreover, the mere fact that the owners of one property used their neighbor's land for a certain purpose does not constitute a custom in *the neighborhood* of neighbors using each other's lands for that purpose.

¶ 33 Nor does *Allen v. First Nat'l Bank*, 120 Colo. 275, 208 P.2d 935 (1949), require a different result. In *Allen*, the bank improved a driveway across its property that it used for access for its customers. *Id.* at 279, 208 P.2d at 937–38. The plaintiff claimed a prescriptive easement over that driveway. *Id.* at 276, 208 P.2d at 936. The trial court found that the bank had, at its own expense, improved the driveway to make it usable and had consistently paid for the maintenance of the driveway; physically interrupted the plaintiff's use of the property for two years within the eighteen-year prescriptive period by placing barriers across the road and no-trespassing signs; and had subsequently permitted the plaintiff to use the driveway. *Id.* at 282–83, 208 P.2d at 939. The trial court held that the plaintiff thus had failed to prove adverse use and entered judgment in favor of the bank. *Id.* at 284, 208 P.2d at 939–40.

¶ 34 The supreme court affirmed and addressed the circumstance where a property owner constructs a passageway across its own property and allows an adjoining landowner to use the passageway. *Id.* at 284, 286, 208 P.2d at 940–41. The supreme court stated: "The general rule seems to be that where one constructs a passageway over his own property, at his own expense, and thereafter it is utilized by others, their use is presumed to be permissive and a neighborly indulgence, and, being permissive in its inception, continues to be such until that permissive use is changed to the knowledge of the owner to an adverse use." *Id.* at 284, 208 P.2d at 940.

¶ 35 There was no evidence in this case that the Roads were constructed by Butler at Butler's expense. Thus, *Allen* is inapposite to the facts here. Moreover, *Allen* does not support Butler's position that the supreme court has endorsed the doctrine of neighborly accommodation as that doctrine is envisioned by Butler. To the contrary, the supreme court used the term "neighborly indulgence" to mean that use of the property was with implied permission. Accordingly, nowhere in *Allen* did the supreme court adopt a doctrine of "neighborly accommodation" that would defeat a claim of prescriptive use without showing express or implied permission.

### E. The Use of the Roads was Continuous for More Than Eighteen Years

¶ 36 Finally, Butler claims that the court erred in finding that the eighteen-year period was not interrupted by actions of Butler. On conflicting evidence, the court found to the contrary. This finding, like the others made by the court, is supported by record evidence, and we may not disregard it. *Maralex Res.*, ¶ 21.

### IV. Conclusion

¶ 37 The judgment is affirmed.

JUDGE J. JONES and JUDGE MILLER concur.