489 P.3d 735
LO VIENTO BLANCO, LLC, an Arizona limited liability company, Petitioner
v.WOODBRIDGE CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation, Respondent
Supreme Court Case No. 20SC292 Supreme Court of Colorado.
June 21, 2021
Attorneys for Petitioner: Azizpour Donnelly, LLC, Katayoun A. Donnelly Denver, Colorado, Law Offices of James A. Knowlton, LLC, James A. Knowlton Basalt, Colorado
Attorneys for Respondent: Peck Feigenbaum PC, Heather J. Manolakas, Lucas Peck, Basalt, Colorado
En Banc
JUSTICE GABRIEL delivered the Opinion of the Court.
¶1 It appears long settled that to obtain title to property by adverse possession, claimants must prove, among other things, that their possession was hostile. Accordingly, we have said that claimants asserting title by adverse possession must claim exclusive ownership and that an acknowledgment of the owner's title during the claimed adverse possession period defeats the requisite hostility.
¶2 In this case, we granted certiorari to decide a narrow question, namely, whether the same principles apply in the context of a prescriptive easement, i.e., whether a claimant's acknowledgment of the owner's title during the asserted prescriptive period interrupts the prescriptive use, thereby defeating the claimed easement.1 ¶3 Like the division below, and for much the same reasons, we now conclude that under Colorado law, a claimant's acknowledgment or recognition of the owner's title during the claimant's asserted prescriptive easement period does not interrupt the prescriptive use or undermine the claimant's adverse use.
¶4 Accordingly, we affirm the division's judgment.
I. Facts and Procedural History
¶5 This case involves an approximately half-acre piece of property that Lo Viento Blanco, LLC owns in Snowmass Village, Colorado (the "disputed parcel"). In the mid-1970's, L.R. Foy Construction Co. ("Foy Construction"), of which Lyle Foy was the sole owner and president, built or subcontracted the construction of several condominium buildings on a larger parcel that included the disputed parcel. The disputed parcel is depicted in the following diagram:
¶6 Thereafter, in 1975, Foy Construction conveyed most of the larger parcel, but not the disputed parcel, to what is now the Woodbridge Condominium Association. From that point forward, and continuing through at least 2012, Woodbridge maintained, used, and improved the disputed parcel in a number of ways. For example:
• Woodbridge owners and tenants skied across the disputed parcel to access a pedestrian bridge that led to a ski area.
• Woodbridge mowed, watered, fertilized, and raked sod that had been installed on the disputed parcel by Foy Construction.
• Residents and guests used a gravel road that runs along the southern and western sides of the disputed parcel to drive their cars up to one of the condominium buildings (Building 31) and to park there.
• Woodbridge installed gravel on this road to enhance the condominium complex's visual appearance.
• Woodbridge's maintenance personnel used the gravel road to service Building 31.
• In 1992 and 1995, Woodbridge planted and transplanted some pine trees on the disputed parcel.
• Also in 1995, Woodbridge used the disputed parcel as a staging area for a major construction project and built a berm just north of the gravel road and planted additional trees there.
• In 1997, Woodbridge installed a picnic table and a split rail fence on part of the disputed parcel, and from that point forward, Woodbridge weeded and mowed the area around the table and fence.
• In the late 1990s, Woodbridge planted some aspen trees on the disputed parcel, some of which it would move in 2004.
• In the early 2000s, Woodbridge installed a chain across a portion of the gravel road so that tenants would not use that road, although maintenance workers could continue to do so.
• In 2004, Woodbridge installed signs in the area of the chained portion of the gravel road reading, "Woodbridge Condominiums," and also installed electricity to allow it to light the signs, as well as landscaping in the area of the signs.
• And also in 2004, Woodbridge installed an in-ground sprinkler system to water the lawn that covers the majority of the disputed parcel.
¶7 In short, beginning in 1975 and for many years thereafter, Woodbridge maintained and used the disputed parcel as if it owned that parcel.
¶8 In the course of the above-described activities, Woodbridge and Foy exchanged correspondence that is pertinent to the issues now before us. Specifically, in March 1991, Woodbridge wrote to Foy asking for permission to plant trees and shrubs on the disputed parcel. Foy responded several months later that the owners of the disputed parcel had no objection to Woodbridge's doing so "as long as you [i.e., Woodbridge] have no claim for the property, trees, shrubs, etc. for the improvements." Foy also noted several other conditions, and he stated that if Woodbridge accepted those conditions, it might want to "write it up in some form" to send for the disputed parcel's owners' approval. Woodbridge did not respond or agree to these conditions, even after Foy wrote another letter in November 1991 noting that he had not received a response to his prior "proposal."
¶9 Thereafter, in June 1992, Woodbridge again wrote to Foy, mentioned the prior correspondence, and this time offered to purchase the disputed parcel for $10,000. As the trial court would later find, this letter amounted to an indirect rejection of Foy's prior proposal to allow Woodbridge to plant trees and shrubs on the disputed parcel, subject to certain conditions. Neither Foy nor the construction entity that he controlled, which then owned the disputed parcel, ever responded to Woodbridge's offer letter, and from then on, Woodbridge continued to maintain and make improvements on the disputed parcel as described above, treating that parcel as if Woodbridge owned it. Moreover, between 1975 and 2011, no record owner of the disputed parcel appears to have visited, inspected, inquired about, or used the disputed parcel.
¶10 In 2010, Lo Viento Blanco acquired the disputed parcel, and it subsequently presented plans to Woodbridge to build on that parcel. Woodbridge objected to these plans, advised Lo Viento Blanco that it owned the disputed parcel by adverse possession, and then, in 2012, filed the present action to quiet title to that parcel in its favor (on an adverse possession theory) or, in the alternative, to confirm that it had established a prescriptive easement over that parcel. Lo Viento Blanco responded by asserting a number of counterclaims, including its own claim to quiet title to the disputed parcel in its favor. The case proceeded to a bench trial, and the trial court ultimately found that Woodbridge had, in fact, acquired title by adverse possession.
¶11 Lo Viento Blanco then appealed, and in an unpublished, unanimous decision, a division of the court of appeals reversed, concluding that the trial court had erred in finding that Woodbridge had acquired title to the disputed parcel by adverse possession. Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC, No. 15CA596, slip op. at 1, 6-7, 9-10, 2016 WL 2958766 (May 19, 2016). As pertinent here, the division reasoned that Woodbridge's 1992 letter to Foy offering to purchase the disputed parcel was fatal to Woodbridge's adverse possession claim because that letter had interrupted the continuity of Woodbridge's adverse use prior to the eighteen year vesting point and rebutted the presumption of adversity raised by Woodbridge's possession. Id. at 6-7. The division thus reversed the order quieting title to the disputed parcel in Woodbridge's favor but remanded the case to the trial court to consider Woodbridge's prescriptive easement claim. Id. at 11.
¶12 On remand, the parties stipulated that the trial court could rule based on the underlying record from the previous bench trial and without any additional evidentiary proceedings. The court then found that Woodbridge had proved its right to a prescriptive easement, and the court subsequently determined the scope of that easement.
¶13 Lo Viento Blanco appealed again, and in a unanimous, published decision, a division of the court of appeals concluded, as pertinent here, that Woodbridge had proved the requisite elements to establish a prescriptive easement. Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC, 2020 COA 34, ¶¶ 15-34, ––– P.3d ––––. In so ruling, the division reasoned that although Woodbridge recognized that it did not hold title, no evidence indicated that it had acted in subordination to the owner's title. Id. at ¶ 30. To the contrary, the evidence showed that Woodbridge had consistently treated the disputed parcel as its own and that it did so without express or implied authorization, which, the division opined, was all that was required to establish the requisite adversity for purposes of a prescriptive easement claim. Id. at ¶¶ 21-22, 30. The division was not persuaded otherwise by Foy's 1991 letter because, the division noted, the permission offered in that letter was conditional and Woodbridge never agreed to any of the conditions set forth therein. Id. at ¶ 34. Thus, Lo Viento Blanco had not rebutted the presumption of adverse use that the law afforded Woodbridge. Id.
¶14 Lo Viento Blanco then petitioned for certiorari, and we granted its petition.
II. Analysis
¶15 We begin by setting forth the applicable standard of review. We then address the principles of law governing prescriptive easements, and we apply those principles to the facts before us.
A. Standard of Review ¶16 The question of what elements are required to establish a prescriptive easement–and what factors may defeat such an easement–is a matter of law that we review de novo. Matoush v. Lovingood, 177 P.3d 1262, 1269 (Colo. 2008). ¶17 We, however, review a trial court's findings of historical fact, including whether a claimant's use of a property was adverse to the owner's property interest, for clear error. M.D.C./Wood, Inc. v. Mortimer, 866 P.2d 1380, 1383-84 (Colo. 1994) ; see also Smith v. Hayden, 772 P.2d 47, 56 (Colo. 1989) ("[W]hether possession is hostile or adverse is a question of fact to be determined by the trier of fact."); L.R. Smith Invs., LLC v. Butler, 2014 COA 170, ¶ 25, 378 P.3d 743, 748 (noting that whether a use is permissive or adverse is a question of fact that is within the factfinder's province). Accordingly, we will not overturn a trial court's factual findings unless they are unsupported by the record. See Hayden , 772 P.2d at 56 ("The findings of the trier of fact must be accepted on review, unless they are so lacking in support in the record as to be clearly erroneous.").
B. Prescriptive Easement ¶18 To obtain title to property by adverse possession, the claimant "must prove that his possession of the disputed parcel was actual, adverse, hostile, under claim of right, exclusive and uninterrupted for the statutory period." Id. at 52. In Colorado, the statutory period is eighteen years. § 38-41-101(1), C.R.S. (2020). ¶19 For adverse possession purposes, to establish the requisite "hostility," the claimant must assert exclusive ownership of the occupied parcel. Hayden, 772 P.2d at 56. Accordingly, if one claiming title by adverse possession of another's property acknowledges the other's title during the adverse possession period, then this will generally interrupt the claimed prescriptive use and thus defeat the requisite hostility and the claim of title by adverse possession. Trask v. Nozisko, 134 P.3d 544, 553 (Colo. App. 2006). ¶20 The elements of a prescriptive easement claim are not the same as those comprising an adverse possession claim. In Colorado, "[a]n easement by prescription is established when the prescriptive use is: 1) open or notorious, 2) continued without effective interruption for the prescriptive period, and 3) the use was either a) adverse or b) pursuant to an attempted, but ineffective grant." Lobato v. Taylor, 71 P.3d 938, 950 (Colo. 2002) ; see also Restatement (Third) of Property (Servitudes) § 2.17 cmt. j (2000) (noting that a servitude can be acquired by prescription only if the adverse use is not interrupted prior to the end of the prescriptive period). ¶21 Thus, unlike a claim of title by adverse possession, a claim to a prescriptive easement does not require a showing of "hostility" (i.e., a claim to exclusive ownership). Rather, in the context of prescriptive easements, an adverse use
is a use made without the consent of the landowner, or holder of the property interest used, and without other authorization. Adverse uses create causes of action in tort for interference with property rights. The causes of action are usually actions for trespass, nuisance, or waste. [Such] uses are adverse or hostile to the property owner in the ordinary sense of the words.
Restatement (Third) of Property (Servitudes) § 2.16 cmt. b (2000). ¶22 Stated otherwise, "[t]o be adverse, ... a use must create a cause of action for interference with an interest in property like trespass, nuisance, or interference with a servitude benefit. To be adverse, the use must be made without authority and without permission of the property owner." Id. at cmt. f; see also Matoush, 177 P.3d at 1270 ("When an easement is created by adverse possession, a party uses land that is not in his or her possession, and does so in a way that is adverse to the property rights of the party who possesses the land."); Restatement (Third) of Property (Servitudes) § 2.16 cmt. a (noting that prescription operates when, among other things, "a person begins using property without the consent or authority of the owner and acquires a servitude if the use continues for the prescriptive period and [the use is open or notorious and continued without effective interruption for the prescriptive period]"). ¶23 In light of the foregoing, a claimant seeking to establish a prescriptive easement need not show that it asserted exclusive ownership of the property during the prescriptive period. Rather, such a claimant must show that its use was without permission or otherwise unauthorized and that it interfered with the owner's property interests. ¶24 A prescriptive easement claimant that shows that it has possessed the easement for more than the statutory period is entitled to a presumption of adverse use. Trueblood v. Pierce, 116 Colo. 221, 179 P.2d 671, 677 (1947) ; see also Restatement (Third) of Property (Servitudes) § 2.16 cmt. g ("The majority of American states apply a presumption that an unexplained, open or notorious use of land, continued for the prescriptive period, is adverse, or made pursuant to an implied servitude."). This presumption can be rebutted, however, if the landowner shows that the claimant's use was permissive at any time during the statutory period. See L.R. Smith Invs., ¶ 15, 378 P.3d at 747 ; see also Restatement (Third) of Property (Servitudes) § 2.16 cmt. f (noting that uses made pursuant to licenses are not adverse and that when a property owner gives permission to use property, the law implies that a license was intended). ¶25 Similarly, a landowner can rebut the presumption of adverse use by showing that the claimant's use was made in subordination to the property owner. See Restatement (Third) of Property (Servitudes) § 2.16 cmt. f ("Uses made in subordination to the property owner are not adverse, even if the property owner has not given permission, and the use is not otherwise authorized."). The mere recognition of the landowner's title, however, is not equivalent to subordination to that title. Id. "Subordination requires that the user act with authorization, express or implied, from the landowner, or under a claim that is derivative from the landowner's title." Id.; see also Mount Emmons Mining Co. v. Town of Crested Butte, 40 P.3d 1255, 1258 (Colo. 2002) (noting that "subordination" is the "act or process by which a person's rights or claims are ranked below those of others" and "is essentially a matter of status between parties") (quoting Subordination, Black's Law Dictionary (7th ed. 1999)). Thus, "[t]he fact that the user tried unsuccessfully to purchase a servitude from the landowner does not establish that his subsequent use was subordinate to the landowner's title." Restatement (Third) of Property (Servitudes) § 2.16 cmt. f.
¶26 If the landowner does not overcome the presumption of adverse use and the claimant establishes all of the other elements for a prescriptive easement noted above, then the claimant will be deemed to have established the right to that prescriptive easement. See Trueblood , 179 P.2d at 677.
¶27 With these principles of law in mind, we turn to the facts of this case. Here, Lo Viento Blanco contends that it rebutted the presumption of adverse use by showing that, during the prescriptive period, Woodbridge (1) sought permission in 1991 to landscape the property at issue; (2) sought to purchase the property in 1992; and (3) acted in subordination to Lo Viento Blanco's title by allegedly continuing the use that Lo Viento Blanco's predecessors in interest had authorized. We are unpersuaded by any of these contentions, and we address them in turn. ¶28 First, with respect to Lo Viento Blanco's assertion that Woodbridge's request for permission to landscape interrupted the prescriptive period, Lo Viento Blanco perceives as irrelevant the facts that Foy responded by stating that it would give permission if Woodbridge would agree to certain conditions (including relinquishing any claim to rights in the easement) and that Woodbridge did not accept those conditions and continued using the property as its own. This, however, is a nonpermissive use, as the trial court found. Accordingly, on the facts presented here, the mere fact that Woodbridge sought permission (which it did not ultimately receive) to landscape the disputed parcel did not interrupt its adverse (i.e., nonpermissive) use. ¶29 Second, for the reasons set forth above, we disagree that Woodbridge's offer to purchase the disputed parcel cut off Woodbridge's prescriptive use. Although such an offer might have done so were the issue before us a claim to title by adverse possession (because it would cut off the requisite hostility), a claimant need not show exclusive ownership in the context of a prescriptive easement. And this makes logical sense: a claimant seeking an easement does not necessarily disagree that the purported servient landowner holds title to the property.
¶30 To the extent that Lo Viento Blanco relies on Trask , 134 P.3d at 553, and Pagel v. Reyman, 628 P.2d 166 (Colo. App. 1981), to argue to the contrary, we are unpersuaded. We acknowledge that the Trask division said, "In general, when an adverse occupier acknowledges or recognizes the title of the owner during the occupant's claimed prescriptive period, the occupant interrupts the prescriptive use." Trask, 134 P.3d at 553. In so stating, however, the division did not appear to recognize the above-described distinction between obtaining title by adverse possession and obtaining an easement by prescription. Moreover, the Trask division cited Pagel in support of its above-quoted statement, but Pagel does not support that proposition. In Pagel, 628 P.2d at 168, the parties had entered into a written agreement by which the party claiming a prescriptive easement obtained the right to use the easement at issue. For the reasons set forth above, this express permission during the prescriptive period interrupted the requisite adverse use. See id. at 168-69. ¶31 Finally, to the extent that Lo Viento Blanco's argument relies on a claim of subordination to its title based on either permissive use or Woodbridge's prior offer to purchase the property, we disagree. Specifically, as the trial court found, at no time was Woodbridge's use permissive. Moreover, notwithstanding Lo Viento Blanco's argument to the contrary, as discussed above, a claimant's unsuccessful offer to purchase a servitude from the landowner (here, the disputed parcel) does not establish that its subsequent use was subordinate to the owner's title. And to the extent that Lo Viento Blanco is asserting subordination to its title based on the alleged continuing use that Lo Viento Blanco's predecessors had authorized, we perceive nothing in the record to support the purported prior authorization, and Lo Viento Blanco cites no such record evidence.
¶32 We thus conclude that Lo Viento Blanco has not rebutted Woodbridge's presumption of adverse use, and Woodbridge has proved the remaining elements necessary to establish a prescriptive easement. To the extent that Lo Viento Blanco attempts to raise additional issues before us, we note that we did not grant certiorari on any of those issues, and we decline to consider them.
III. Conclusion
¶33 Under Colorado law, a claimant's acknowledgment or recognition of the owner's title during the claimant's prescriptive period does not interrupt that prescriptive use or defeat the presumption that the use was adverse for purposes of establishing a prescriptive easement. Accordingly, and because Woodbridge has proved all of the other elements necessary to establish a prescriptive easement, we conclude that the division below correctly affirmed the trial court's finding of a prescriptive easement here.
¶34 We therefore affirm the division's judgment.
1 Specifically, we granted certiorari to review the following issue:
Whether, under Colorado law, an adverse occupier's acknowledgment or recognition of the owner's title during the occupant's claimed prescriptive period interrupts the prescriptive use and defeats the presumption that any use was adverse.